0285

Norman E. HOLDER and Linda S. Holder, Appellants, v. F. Ray HASKETT, Jr., Haskett Realty, Inc., and Huntington Developers, Respondents.

(321 S. E. (2d) 192)

Court of Appeals

*Dallas D. Ball*, Liberty, *for appellants.*

*Kenneth D. Acker*, Pickens, *for respondents.*

Heard April 16, 1984.

Decided Sept. 26, 1984.

BELL, Judge:

This is an action for damages for alleged breach of an implied warranty of habitability arising from the sale of residential real estate. Norman and Linda Holder appeal from the granting of nonsuits in favor of the defendants F. Ray Haskett, Jr., and Huntington Developers and the granting of a directed verdict in favor of the defendant Haskett Realty, Inc. We affirm.

In *Lane v. Trenholm Building Company*, 267 S. C. 497, 229 S. E. (2d) 728 (1976), our Supreme Court held that when a new house is sold, the vendor impliedly warrants the house is free from latent defects which would render it unfit for its intended use as a dwelling. Liability is based not on fault, but

on the fact the vendor has placed the house in the stream of commerce and has received a fair price for it. In other words, liability is founded on contract, not tort.

This appeal presents the question of whether parties other than the vendor of the house can be held liable under *Lane*. In our opinion, the Holders' claim against the defendants in this case does not come within the scope of the *Lane* rule, because the defendants were not parties to the contract for sale of the house. We decline to extend liability on an implied warranty of habitability to those who were not parties to the contract of sale.

Viewed in the light most favorable to the Holders, the material facts are as follows. The Holders wished to purchase a house in a residential subdivision called Huntington Estates, which was owned and developed by Huntington Developers (the Developer). Haskett Realty, Inc. (the Relator), owned by F. Ray Haskett, Jr., was the listing agent for Huntington Estates. Haskett owned a one-fourth interest in the Developer.

It happened that the first house chosen by the Holders had already been sold to another purchaser. The Realtor then suggested the Holders might wish to purchase a lot in the subdivision and build their own house. As an inducement to purchase a lot and build, the Realtor told the Holders they could receive an $800 discount on a lot if they contracted with Willard Sellers to build the house. Sellers owned a one-fourth interest in the Developer and was one of several contractors building houses in Huntington Estates.

After satisfying themselves that Sellers was a responsible building contractor, the Holders decided to build. They contracted with Sellers to purchase an unimproved lot. Prior to taking conveyance of the land, they obtained bank financing and entered into a second contract with Sellers for construction of the house. The Realtor was not involved in the negotiations leading to the construction contract between the Holders and Sellers.

After the Holders and Sellers executed the construction contract, the Developer deeded the lot directly to the Holders on December 13, 1977.[1] Part of the Realtor's commission was

---

[1] The Developer, not Sellers, held title to the lot. Apparently, it was originally contemplated that the Developer would sell the lot to Sellers at a

paid by Sellers at closing; the remainder was in the form of a promissory note from Sellers to the Realtor. The record does not indicate whether the note has been paid.

In March 1978 Sellers began construction of the house. As the work progressed, the bank permitted Sellers to draw three progress payments against the Holders' loan balance, as provided in the construction contract. These payments totalled approximately $16,000. In april 1978, Sellers abandoned construction and left town. The Holders then discovered not only that the house was incompleted, but also that it had serious defects in construction.

After Sellers abandoned the house, the Holders filed a claim against his performance bond with the South Carolina Residential Home Builders Commission. They recovered approximately $7,200 on the bond. The Holders then sued the Developer, the Realtor, and Haskett individually, for breach of implied warranty on the theory that the sale of the lot and house was a "package deal" in which each of them participated.

The circuit judge was correct to grant involuntary nonsuits in favor of the Developer and Haskett. The Holders' evidence failed to establish that either was a "vendor" of the house.[2] Neither was a party to the contract for sale of the house and neither received any part of the purchase price the Holders paid for the house. Neither had any financial interest in Sellers's construction company. These facts were insufficient, as a matter of law, to bring the Developer and Haskett within the scope of the *Lane* rule. *Cf. Roundtree Villas Association, Inc. v. 4701 King's Corporation,* 321 S. E. (2d) 46 (S. C. 1984) (absent contract lender not liable for defects in construction under *Lane* doctrine).

The judge was also correct in granting a directed verdict in favor of the Realtor. At best, the evidence showed the Realtor acted as an agent for Sellers in putting together the "package deal" for the lot and house. For

discount, which he would then pass on to the Holders as part of his "package deal" including construction of the House. For reasons not clear from the record, but perhaps to save additional closing costs, the Developer conveyed the lot directly to the Holders pursuant to their contract with Sellers.

[2] There is no question of liability for sale of the lot, since no implied warranty arose from the sale of unimproved land. *See Jackson v. River Pines, Inc.,* 276 S. C. 29, 274 S. E. (2d) 912 (1981).

its services as an agent it received a commission based on the total price of the package. An agent, however, is not liable to a third party for breach of a third party contract by his principal. *Skinner & Ruddock, Inc. v. London Guarantee & Accident Co.*, 239 S. C. 614, 124 S. E. (2d) 178 (1962). The Realtor was not a party to the contract for the house between the Holders and Sellers. That contract was independently negotiated without the Realtor's participation. The Holders paid no consideration to the Realtor for the house. The Realtor had no financial interest in Seller's construction company. Thus, the Realtor was not a vendor of the house and had no liability on an implied warranty arising from the contract for sale of the house.

Affirmed.

SHAW and CURETON, JJ., concur.