22581

Richard S. ARVAI and Ellen Arvai, Petitioners v. Jack E. SHAW and Jack E. Shaw Builders, Inc., Respondents.

(345 S. E. (2d) 715)

Supreme Court

*Roger L. Couch,* of *Lister & Couch,* Spartanburg, *for petitioners.*

*Jefferson V. Smith, Jr.,* of *Carter, Smith, Merriam & Rogers,* Greer; and *Ellis M. Johnston, II,* of *Haynsworth, Perry, Bryant, Marion & Johnstone,* Greenville, *for respondents.*

Heard May 6, 1986.

Decided June 23, 1986.

CHANDLER, Justice:

Richard and Ellen Arvai (the Arvais) sued Jack E. Shaw and Jack E. Shaw Builders, Inc. (Shaw) for breach of an implied warranty of habitability as to their residence. The Circuit Court granted Shaw's motion for summary judgment. The Court of Appeals affirmed. *Arvai v. Shaw,* 286 S. C. 357, 334 S. E. (2d) 287 (Ct. App. 1985).

As modified, we affirm.

## FACTS

Shaw purchased an unimproved lot in Greenville, South Carolina, in October, 1970. A month later, he contracted with Thomas and Margaret Farr to build a house on the property. After conveying the lot to the Farrs, Shaw built the house according to the Farrs's plans and specifications.

The Farrs moved in, but were dissatisfied with the septic tank system. They reconveyed the house to Shaw. In November, 1971, Shaw sold the house to James and Frances Semones, who, in turn, conveyed it to the Arvais in September, 1976.

Six days after moving in, the Arvais experienced flooding from Brushy Creek, located at the rear of the property. Fifteen inches of water entered the utility room, garage and basement. Since that date, they have experienced additional periodic flooding.

In their complaint, the Arvais allege Shaw breached an implied warranty of merchantability and fitness for the intended purpose of habitability. Specifically, they claim the

house was designed in such a manner as to make it suscepti- ble to damage from floods.[1]

The Circuit Court and Court of Appeals held an implied warranty is applicable only to houses built for speculative sale. As the Arvais' residence was custom-built according to the Farrs's plans, they held Shaw was entitled to judgment as a matter of law.

## ISSUE

This Court granted review on a single issue:

Is an implied warranty for fitness limited to houses built for speculation or does it extend, as well, to custom-built houses?

## DISCUSSION

In *Rutledge v. Dodenhoff*, 254 S. C. 407, 175 S. E. (2d) 792 (1970), this Court first recognized an implied warranty that a dwelling is fit for the purposes for which it is intended. We held the doctrine of *caveat emptor* is inapplicable to a trans- action *between a buyer and the builder-vendor of a new house.*

In *Lane v. Trenholm Building Co.*, 267 S. C. 497, 229 S. E. (2d) 728 (1976), this Court expanded the implied warranty doctrine. Trenholm, the first seller, contended it could not be held liable under an implied warranty because it was not the builder of the house in question. We held:

When a *new building is sold* there is an implied war- ranty of fitness for its intended use which *springs from the sale itself*. [Emphasis supplied.]

267 S. C. at 500, 229 S. E. (2d) at 729.

We reasoned that the sale of a new house is the sale of a product and should be governed by the same rules which apply to sales of personalty. Hence, in *Lane* we held that a transaction between an innocent purchaser and the vendor who places a new home in the stream of commerce should be governed by the doctrine of *caveat venditor.*

---

[1] As noted by the Court of Appeals, the Arvais also brought a negligence cause of action against Shaw. They failed to preserve their appeal of this issue, however.

In *Terlinde v. Neely*, 275 S. C. 395, 271 S. E. (2d) 768 (1980), our most recent case involving implied warranties, we held lack of privity does not bar a remote purchaser from suing an initial vendor on an implied warranty theory.

Other jurisdictions have refused to hold a general contractor or other builder liable under an implied warranty where he is not also the initial vendor of the house. *See* 25 A.L.R. (3d) 383; 10 A.L.R. 4th 385. Wyoming is an exception. *See Maxley v. Laramie Builders, Inc.*, 600 P. (2d) 733 (Wyo. 1979).

The critical distinction is the *source* of the implied warranty. As the Supreme Court of Illinois stressed in *Redarowicz v. Ohlendorf*, 92 Ill. (2d) 171, 65 Ill. Dec. 411, 441 N.E. (2d) 324 (1982), the implied warranty of habitability has its roots in the *execution of a contract for sale.* Indeed, in *Lane* we held that the warranty springs from the sale. The determining factor is not whether the defendant actually builds the defective house, but that he places it, by the initial sale, into the stream of commerce. Holding the custom builder liable under an implied warranty, where he is not also involved in the *sale* of the house, would be incompatible with the law of warranty.

We disagree with the Arvais' contention that an implied warranty attached at the time of the sale of the house from Shaw to the Semones. At the time the house was built, the Farrs owned the property. They moved in and later conveyed the house to Shaw. At the time of the sale to the Semones, the house was not *new*, but *used.* Under *Rutledge* and *Lane*, no warranty attaches to sales of used homes. *See also Waggoner v. Midwestern Development, Inc.*, 83 S.D. 57, 154 N.W. (2d) 803 (1967), cited with approval in *Rutledge.*

Whether a house is for speculation or is custom-built is not determinative. While the houses involved in *Rutledge, Lane* and *Terlinde* were speculatively built, the decisions in those cases were not based upon a distinction between the two types of construction.

We agree with the result reached by the Court of Appeals. However, we affirm on the grounds set out in this opinion.

Affirmed.

NESS, C. J., and GREGORY, HARWELL and FINNEY, JJ., concur.