1192

CAROLINA WINDS OWNERS' ASSOCIATION, INC., Appellant v. JOE HARDEN BUILDER, INC., Baker Masonry, Inc., Grayco Steel, Inc., Richard E. Martin, AIA Associates, and United States Fidelity and Guaranty Company, Defendants, Of whom Joe Harden Builder, Inc., Baker Masonry, Inc., and United States Fidelity and Guaranty Company, are Respondents.

(374 S. E. (2d) 897)

Court of Appeals

*John P. Henry* and *Emma Ruth Brittain, Thompson, Henry & Gwin, P.A.,* Conway, *for appellants.*

*Michael W. Battle,* of *Lovelace & Battle,* and *John B. McCutcheon, Jr.,* of *McCutcheon, McCutcheon & Baxter,* Conway, *Hubert J. Bell, Jr.,* of *Smith, Currie & Hancock,* and *J. Alexander Porter* and *Sidney R. Barrett, Jr.,* of *Porter & Doster,* Atlanta, Ga., *Thomas E. Pederson,* Charleston, and *Dewitt T. Black, III,* of *Black & Beil,* Hilton Head Island, *for respondents.*

Heard Feb. 15, 1988.

Decided July 11, 1988.

BELL, Judge:

This is an action for damages for alleged defects in the construction of a residential building. Carolina Winds Owners' Association, Inc., representing the interests of the owners of the building under a horizontal property regime, sued John Harden Builder, Inc., the general contractor, Baker Masonry, Inc., the masonry subcontractor, United States Fidelity and Guaranty Company, the surety on

Harden's performance bond, and others not parties to this appeal, for alleged cracking in the exterior facial brick walls of the building. The complaint alleges causes of action for (1) negligent construction and (2) breach of an implied warranty of fitness for intended use. It seeks general damages for the cost of repairing the building, special damages for alleged lost use of the building and impairment of the condominium operation, and punitive damages. Harden and Fidelity moved to dismiss the action under Rule 12(b)(6), S. C. R.Civ.P., for failure to state facts sufficient to constitute a cause of action. Baker Masonry moved pursuant to Rule 12(c), S. C. R.Civ.P., for judgement on the pleadings for failure to state a cause of action. The circuit court granted the motions and dismissed action as to these defendants. The Owners appeal. We affirm.

On appeal from the granting of a motion under Rule 12(b)(6) or Rule 12(c), the reviewing court may not consider matters outside the pleadings. *JM Mechanical Corp. v. United States, by United States Dept. of Housing and Urban Dev.*, 716 F.2d 190 (3d Cir. 1983) (Fed.R.Civ.P. 12(b)(6)); *McDonnell v. Estelle*, 666 F.2d 246 (5th Cir. 1982) (Fed.R.Civ.P. 12(c)); *cf. Carrington v. City of Spartanburg*, 283 S. C. 298, 322 S. E. (2d) 28 (Ct.App. 1984) (demurrer), *overruled on other grounds, McCall v. Batson*, 285 S. C. 243, 329 S. E. (2d) 741 (1985). A motion under Rule 12(b)(6) or Rule 12(c) ) admits the well pleaded facts in the complaint, but it does not admit the inferences drawn by the plaintiff from such facts, nor does it admit conclusions of law. *Bryan v. Stillwater Bd. of Realtors*, 578 F.2d 1319 (10th Cir. 1977) (Fed.R.Civ.P.12(b)(6)); *Hargis Canneries v. United States*, 60 F.Supp. 729 (W. D. Ark. 1945) (Fed.R.Civ.. 12(c)); *cf. Carrington v. City of Spartanburg, supra.* The court must take all well pleaded factual allegations in the complaint as true. *Bryan v. Stillwater Bd. of Realtors, supra; Austad v. United States*, 386 F.2d 147 (9th Cir. 1967) (Fed.R.Civ.P. 12(c)); *cf. Cook v. Mack's Transfer & Storage*, 291 S. C. 84, 352 S. E. (2d) 296 (Ct. App. 1986) (demurrer), *cert. denied*, 292 S. C. 230, 355 S. E. (2d) 861 (1987).

The complaint alleges these material facts. Plaza Development Services, a joint venture, developed a twelve story condominium building in Myrtle Beach known as Carolina

Winds Condominium. Plaza contracted with Harden to con-
struct the building. Fidelity was the surety on Harden's
performance bond. In turn, Harden entered a subcontract
with Baker Masonry for the masonry work on the building,
including installation of exterior brick facial walls.

When Harden finished the project, Plaza executed a mas-
ter deed establishing the Carolina Winds Horizontal Prop-
erty Regime. It then offered for sale and sold residential
units in the building to various individual owners. The Caro-
lina Winds Owners' Association, Inc., was incorporated for
the purpose of managing the common elements of the re-
gime on behalf of the unit owners.

After the building was completed, the exterior facial brick
walls began to crack and buckle. An investigation revealed
this condition was caused by latent defects due to negligent
construction. This suit followed.

## I.

We first address the Owners' contention that Harden and
Baker Masonry are liable for repair costs because they
breached an implied warranty that the building is fit for its
intended use.

The implied warranty of habitability was first recognized
in the common law in the decision of *Miller v. Cannon Hill
Estates, Ltd.,* (1931) 2 K.B. 113. In that case, the King's
Beach held that the builder-vendor of a house who knew his
purchaser intended to use it as a dwelling impliedly war-
ranted it would be fit for that purpose.

The same rule was recognized in South Carolina in
■ *Rutledge v. Dodenhoff,* 254 S. C. 407, 175 S. E. (2d) 792
(1970), in which the Supreme Court held that a
builder-vendor of a new house gives his purchaser an im-
plied warranty that the house is fit for its intended use.
Even after conveyance of title, the builder-vendor may be
held liable to the purchaser for damages caused by a defec-
tive condition which renders the house unfit as a dwelling.[1]

---

[1] *Rutledge* modifies the rule that all provisions of the contract of sale
become merged in the deed upon conveyance of the property. *See Hughes v.
Greenville Country Club,* 283 S. C. 448, 322 S. E. (2d) 827 (Ct. App. 1984). It
treats the implied warranty of habitability as an independent covenant
which survives delivery of the deed.

In *Lane v. Trenholm Building Co.*, 267 S. C. 497, 229 S. E. (2d) 728 (1976), the Court extended this rule to a developer who sold a new dwelling, although he did not build it. The Court held that when a new house is sold, the vendor impliedly warrants the house is free from latent defects which would render it unfit for its intended use as a dwelling. This warranty springs from the sale itself. *Id.*, 267 S. C. at 500, 229 S. E. (2d) at 729. Liability arises not from fault, but because the vendor, by initial sale, has placed the house in the stream of commerce and has received a fair price for it. *Holder v. Haskett*, 283 S. C. 247, 321 S. E. (2d) 192 (Ct. App. 1984). In other words, liability is founded on contract, not tort. *Id.*

Because the sale contemplates the use of the house as a habitable dwelling, an implied warranty does no more than fulfill the reasonable expectations of the parties under the contract. *Lane v. Trenholm Building Co.*, 267 S. C. at 503, 229 S. E. (2d) at 731. The buyer has paid a fair price for a habitable dwelling. If the house is defective, the buyer's expectancy interest is injured and he has a right to recover his damages as measured by the contract. The cost of repair is one such measure. Damages place the buyer in the position he would have enjoyed had the dwelling been as warranted. Damages give the buyer the benefit of his bargain.

In this case, the Owners, as purchasers of the condominium units, argue that Harden and Baker Masonry are liable to them on the implied warranty arising from the sale of a new dwelling. This contention is foreclosed by the Supreme Court's decision in *Arvai v. Shaw*, 289 S. C. 161, 345 S. E. (2d) 715 (1986), and our prior holding in *Holder v. Haskett*, supra.

In *Arvai*, a builder named Shaw constructed a house under a contract with the owners of an unimproved lot. Upon completion of the house, the owners moved in. As a result of dissatisfaction with the house, the owners sold it to Shaw, who in turn sold it to Arvai's predecessor in title. Arvai then purchased the house. Soon afterwards, the house was flooded several times. Arvai sued Shaw for breach of an implied warranty of habitability, claiming the house was built so as to make it susceptible to flood damage.

The Supreme Court held that Arvai could not recover

against Shaw, because Shaw was not the initial vendor of the house. The Court explained that the implied warranty of habitability has its roots in a contract for sale of the dwelling. The determining factor is not that the defendant builds the defective house, but that he places it, by initial sale, into the stream of commerce. To make the builder liable if he is not involved in the initial sale of the house is incompatible with the theory that the warranty springs from the sale. Thus, Shaw, as the builder of the house, was not liable.[2]

In *Holder v. Haskett, supra,* this Court similarly held that the implied warranty of habitability does not bind those who are not parties to a contract of sale. In *Holder*, the purchasers of a new house attempted to recover damages for defects in construction from the developer, a realty company, and the owner of the realty company. None of them was a party to the contract of sale. We denied the claim.

The Owners argue that *Terlinde v. Neely,* 275 S. C. 395, 271 S. E. (2d) 768 (1980), supports their warranty cause of action against Harden and Baker Masonry. In that case, Neely built a speculative house in a residential subdivision, which he afterwards sold to Johnson. Three years later, the house began settling. Johnson undertook to correct the damage caused by the settling, then sold the house to Terlinde. Within a short time after Terlinde purchased the house, cracks appeared in the walls, the floor began to sink away from interior walls, the doors would not close properly, the brick veneer on the exterior began to crack and separate, and the pillars underneath began sinking away from the supporting beams of the floor. Terlinde discovered the house was settling because Neely built its footings on fill dirt instead of solid ground. In the ensuing legal action, Neely defended the warranty claim by arguing there was no privity of contract between him and Terlinde. The Supreme Court rejected this argument, holding that "lack of privity does not bar a remote purchaser from suing an initial ven-

---

[2] The Court also rejected the claim that Shaw was liable because he sold the house to Arvai's predecessor in title. The Court held that the implied warranty recognized in *Rutledge and Lane* does not attach to sales of used homes. As the Court interpreted the facts, Shaw was not the initial seller of the house, but an intermediate vendor. Since the house was "used," not "new," when Shaw sold it, no warranty attached to its sale by Shaw.

dor on an implied warranty theory." *Arvai v. Shaw,* 289 S. C. at 164, 345 S. E. (2d) at 716.

In *Terlinde,* the defendant placed the defective house in the stream of commerce by initial sale. The critical distinction in this case is that Harden and Baker Masonry never sold the building to anyone—they were not vendors. *Arvai v. Shaw, supra,* clearly limits the implied warranty of habitability to the first seller of a new house. It specifically excludes a builder who does not, by initial sale, place the dwelling into the stream of commerce. In like manner, *Holder v. Haskett, supra,* prevents a purchaser from recovering on an implied warranty against persons who were not parties to the contract of sale from which the warranty springs. Here, Harden and Baker Masonry contracted to construct the building. They executed no contracts to sell either the building or its individual dwelling units. Since they were not parties to the initial sale of the building or the condominium units, we hold they are not liable to the Owners on an implied warranty arising from the sale. The owners' remedy, if any, is against the initial seller of the condominium units.

## II.

The Owners also claim in negligence for the defective construction. The circuit court held that a cause of action for negligence is barred by the so-called "economic loss rule" and dismissed the claim.

## A.

The "economic loss rule" is a creation of the modern law of products liability. The rule states that an action will not lie in tort for a product defect without a claim of injury to the person or other property of the plaintiff. If the only damage is diminution in the value of the product itself, the plaintiff's remedy lies in contract, whether the loss results from inferior quality of the product, its unfitness for an intended use, its deterioration, or its destruction by reason of the defect.

The traditional common law reached the same result by applying the doctrine of privity of contract: "The general rule is that a contractor, manufacturer, vendor or furnisher

of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of such article." 2 *Cooley on Torts*, 3d ed. (1906), at 1486; *see also Curtain v. Somerset*, 140 Pa.St. 70, 21 A. 244 (1891); *cf. Ancrum v. Camden Water, Light and Ice Co.*, 82 S. C. 284, 64 S. E. 151 (1909). Where the defendant's lack of care resulted in nothing more than an inferior product, a rule limiting his liability to the party with whom he had contracted was sound.

However, the courts came to perceive that the rule of privity cannot justly apply if the defendant's conduct creates an unreasonable risk of harm to those interests which are independent of any contract. *See, e.g., Grant v. Australian Knitting Mills, Ltd.*, [1936] A. C. 85, 103-105. Thus, in *Salladin v. Tellis*, 247 S. C. 267, 146 S. E. (2d) 875 (1966), the South Carolina Supreme Court rejected the defense of "no privity" where a manufacturer's lack of care in fabricating a chattel created an unreasonable risk of physical harm and caused actual injury to one who used it in the manner and for the purpose for which it was supplied, even though he was not a party to a contract with the manufacturer.

Eventually, a general exception to the rule of privity emerged: where the actor's negligent conduct results in damage to the person or property of the plaintiff, the incidental fact that the conduct arises from performance of a contract does not insulate the actor from liability in tort.[3] In such cases, privity of contract is irrelevant, because liability arises, not from agreement of the parties, but by operation of law. It springs from a duty of care, not from a promise.[4]

---

[3] *See, e.g., Rogers v. Scyphers*, 251 S. C. 128, 161 S. E. (2d) 81 (1968) (injury to person: builder-vendor of house liable in negligence to invitee of purchaser for defect in construction); *Edward's of Byrnes Downs v. Charleston Sheet Metal Co.*, 253 S. C. 537, 172 S. E. (2d) 120 (1970) (injury to chattels: construction subcontractor liable in negligence to owner of chattels in adjacent building for failure to exercise due care in construction).

[4] The principle underlying the separation of negligence from contract was perceived by Lord Ellenborough, C. J., in *Govett v. Radnidge*, (1802) 3 East. 62, and again by Tindal, C. J., in *Williams v. Holland*, (1833) 10 Bing. 112. Both cases, however, were decided on a point of pleading and seem to have had no influence on later decisions. They anticipated the development of modern negligence law by over a century.

The duty of care is that standard of conduct the law requires of an actor in order to protect others against the risk of harm from his actions. *Carter v. R. L. Jordan Oil Co., Inc.*, 294 S. C. 435, 365 S. E. (2d) 324 (Ct. App. 1988). It embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care.

A breach of the duty of care resulting in damage to the person or property of the plaintiff gives him a claim for reparation, i.e., a claim to be restored to his former position by payment of money damages. Unlike the law of contract, the law of negligence does not protect the expectancy interest in the performance of a promise. Negligence seeks to vindicate a person's interest in the security of his existing position or estate, whereas contract concerns a prospective advantage which has not been realized because a bargain was broken. Thus, if the ground for complaint is the defendant's negligent performance of a duty arising solely from a contract, the action lies in contract, not negligence. *Brown v. South Carolina Ins. Co.*, 284 S. C. 47, 324 S. E. (2d) 641 (Ct. App. 1984), *cert. dismissed*, 290 S. C. 154, 348 S. E. (2d) 530 (1985).

In effect, the "economic loss rule" simply observes the traditional distinction between recovery in contract and recovery in negligence in those cases where the damage consists of a diminution in the expected value of a product. Unless the plaintiff has contracted with a party who warrants, expressly or impliedly, that the product meets a standard of quality, value, or fitness for an intended use, he has no claim for inferior or negligent manufacture of goods in the steam of commerce.

### B.

These general principles apply with equal force to the sale of a dwelling. When the harm is to the purchaser's expectation that the dwelling is fit for an intended use, contract, not negligence, principles are involved. In such cases, the dwelling fails to live up to its promise, causing the purchaser to lose the benefit of his bargain. This loss is occasioned not by a failure of the actor

to conform his conduct to a standard of care imposed by law, but by his failure to fulfill a standard of quality imposed by the contract. Unlike the risk of physical injury to one's person or property, the risk to the expectancy interest can be fairly allocated by agreement of the parties to the sale. To protect himself, the purchaser may either take warranties, bargain for a lower price, or insure the risk.

On the other hand, holding a builder liable to remote purchasers of a defective dwelling would have entirely different consequences. By definition, liability would attach because of a contract to which the builder was not a party. He would be deprived of the normal opportunity to limit his liability for commercial or pecuniary losses, direct and consequential. Unrestricted liability to remote parties in the stream of commerce would destroy the fundamental principle of the common law that a contract between two parties cannot give rise to an obligation in a third who is a stranger to the bargain. It would also violate the common law principle which gives parties in the marketplace freedom to allocate the risk of purely economic loss by agreement. Under a rule of negligence, the risk of economic loss would automatically be allocated by operation of law. In a commercial transaction involving purely pecuniary loss, this approach has little to commend it.

## C.

The Owners argue that *Terlinde v. Neely, supra,* is authority for the recovery of "economic loss" through a negligence claim. It is clear, however, that no issue involving the "economic loss rule" was decided in *Terlinde.* Nothing in the opinion suggests a builder owes an unlimited duty in negligence for unworkmanlike construction which diminishes the economic value of a house.[5] Unlike the defendants in this case, the builder in *Terlinde* built the house for speculation, not pursuant to a contract for its construction. He placed it in the stream of commerce by initial sale. In our view, *Terlinde* must be limited to its facts. *See Arvai v. Shaw, supra.* It has no application to this case.

---

[5] Since the first purchaser, who deals directly with the vendor-builder, cannot recover *in negligence* for diminished value of the dwelling, remote purchasers should be in no better position to sue in negligence.

## D.

The Owners also tell us the "economic loss rule" is objectionable because it leaves them without a remedy for a real injury and allows a negligent builder to escape responsibility for his carelessness. We are not persuaded.

On the facts alleged, the Owners, as original purchasers without knowledge of the defect, have a complete remedy against the seller on the implied warranty of fitness for intended use. Because the seller placed the dwelling units in the stream of commerce by initial sale, he is liable for damages under *Lane v. Trenholm Building Co., supra.* There is no need to disturb fundamental distinctions between liability in contract and in tort to give these plaintiffs a remedy.

The builder can also be held responsible for defective workmanship without blurring the distinction between contract and tort. When a builder contracts to construct a dwelling, he gives an implied warranty that the work undertaken will be performed in a careful, diligent, workmanlike manner. *Hill v. Polar Pantries*, 219 S. C. 263, 64 S. E. (2d) 885 (1951); *cf. Tharpe v. G. E. Moore Co.*, 254 S. C. 196, 174 S. E. (2d) 397 (1970); *Carter v. R. L. Jordan Oil Co., Inc. supra; Hutson v. Cummins Carolinas, Inc.*, 280 S. C. 552, 314 S. E. (2d) 19 (Ct. App. 1984). Subcontractors assume the same obligation under their contracts with the general contractor. The person contracting with the builder or the subcontractor acquires a corresponding right to receive a well constructed building. If the construction turns out to be defective by reason of the builder's unworkmanlike performance, the breach of warranty gives the injured party, i.e., the person who contracted to have construction work done, a claim for damages for loss of his expectancy. This is a liability arising from the construction contract to which the builder is a party, not some subsequent contract of sale to which he is a stranger. It allocates responsibility for negligently caused defects fairly and certainly between the parties immediately concerned with the risk. It also gives them the opportunity to adjust the allocation of risk by agreement, if they so desire.

## E.

The Owners urge us in deciding this appeal to adopt the reasoning of *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 517 A. (2d) 336 (1986). *Atlantis Condominium* involved allegations that the builder of a condominium had installed a defective electrical system, creating a fire hazard to the occupants of the building.

The first issue before the court was whether a builder, under any circumstances, owes a tort duty of reasonable care to a person with whom he has no contractual privity. *Id.*, 308 Md. at 24, 517 A. (2d) at 339. The builder relied on the so-called rule in *Winterbottom v. Wright*, (1842) 10 M. & W. 109, 152 Eng. Rep. 402, to assert he could not be liable in negligence for personal injury to a party with whom he was not in privity of contract. The court held that privity is not an absolute prerequisite to the existence of a duty in tort. *Council of Co-Owners Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 308 Md. at 32, 517 A. (2d) at 343.[6] Thus, the builder could be held liable for personal injury resulting from negligent construction of the condominium. The court did not reach the question of whether a risk of property damage alone will support the recognition of a tort duty. *Id.*, 308 Md. at 32, 517 A. (2d) at 344.[7]

The second issue was whether a negligence action may be maintained against a builder where the risk of personal injury exists, but personal injury has not in fact resulted. Inexplicably, the court addressed this issue with an extended discussion of the "economic loss rule"[8] The court concluded that liablity in negligence should depend upon the

[6] This principle, articulated in the leading cases of *MacPherson v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050 (1916), and *Donoghue v. Stevenson*, [1932] A. C. 562, has become the general rule in common law jurisdictions. There is no need to adopt it from the *Atlantic Condominium* decision, since it is already the law of South Carolina. *See Salladin v. Tellis, supra.*

[7] South Carolina law holds the builder liable in negligence for injury caused to the person or the property of the plaintiff. *Rogers v. Scyphers*, 251 S. C. 128, 161 S. E. (2d) 81 (1968) (injury to person); *Edward's of Byrnes Downs v. Charleston Sheet Metal Co.*, 253 S. C. 537, 172 S. E. (2d) 120 (1970) (injury to property).

[8] We say "inexplicably," because the case involved a claimed risk of personal injury and the court's holding rested solely on the risk of death or "serious" personal injury. By definition, the "economic loss rule" does not apply to claims of personal injury.

risk generated by the negligent conduct, "rather than upon the fortuitous circumstance of the nature of the resultant damage." *Id.* 308 Md. at 35, 517 A. (2d) at 345. The court then held that if the risk is of death or personal injury a negligence action will lie for recovery of the reasonable cost of correcting the dangerous condition. *Id.* The court apparently was compelled to this conclusion by the question, "Why should a buyer have to wait for a personal tragedy to occur in order to recover damages to remedy or repair defects?"[9]

It appears to us the question poses a false dilemma. The buyer does *not* have to wait until a personal injury occurs— as we have discussed above, he may recover damages to remedy the defect by suing the seller forthwith for breach of the warranty of fitness arising from the initial sale. There is nothing unreasonable about requiring him to pursue an available contractual remedy. Contrary to the suggestion of the Maryland court, "[t]he distinction that the law has drawn between tort recovery for physicial injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury." *Seely v. White Motor Co.*, 63 Cal. (2d)9, 18, 45 Cal. Rptr. 17, 23, 403 P. (2d) 145, 151 (1965).

Moreover, there is a fundamental reason why a person suing in negligence for personal injury must wait until the injury actually occurs. The gravamen of a negligence action is the existence of actual damage to the person of the plaintiff. *See Gray v. S. Facilities, Inc.*, 256 S. C. 558, 183 S. E. (2d) 438 (1971) (cause of action for negligence arises only when damage has been caused to plaintiff). To establish a cause of action for negligence a plaintiff must show the concurrence of three essential elements: (1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty by negligent act or omission; and (3) damage resulting from the breach of duty. *Carter v. R. L. Jordan Oil Co., Inc., supra.* If, as in *Atlantis Condominium*, there is merely a risk of personal injury, but none has in fact resulted, the third element of the cause of action is not met. To hold that an action in

---

[9] *Id.*, quoting from *Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc.*, 406 So. (2d) 515, 519 (Fla. Dist. Ct. App. 1981), *review denied*, 417 So. (2d) 328 (Fla. 1982).

negligence will lie on such facts works a radical, and wholly unwarranted, change in the elements of negligence law. There are many reasons why such a rule is unsound.

For one, the fact of damage is uncertain until actual injury results. Even where the risk of harm is high, no harm may occur at all. Likewise, among those persons who could foreseeably be injured, actual harm may occur to some persons but not to others, even though all are subject to the same risk. It is not a tort to create risk; it is only a tort to cause damage.

For another, unless personal injury has resulted in fact, the quantum of damage is uncertain. The same act of negligence may, and often does, cause different degrees of damage to different plaintiffs. One passenger in an automobile may receive severe, permanent, disabling injuries in a collision, while another in the seat next to him walks away with minor cuts and bruises. There is no way to predict the quantum of damage with certainty until the injury actually occurs.

The law generally places two restrictions on the recovery of damages: (1) damages must bear some reasonable relation to plaintiff's actual loss, *See Benshoof v. Reese*, 250 Iowa 868, 97 N.W. (2d) 297 (1959); *Domann v. Pence*, 183 Kan. 135, 325 P. (2d) 321 (1958), and (2) damages may not be based on speculation. *Gray v. S. Facilities, Inc., supra* (amount of damages cannot be left to conjecture, guess, or speculation). *Atlantis Condominium* violates both of these principles. Cost of repair damages bear no logical relationship to the actual loss the plaintiff may suffer if a risk of personal injury is realized. In some cases, the cost of repair might be many multiples of the actual loss to the plaintiff if the harm occurred. In others, it might be a fraction. Furthermore, the measure of damages is manifestly based on speculation until a particular plaintiff actually suffers a known injury to his person.

Recovery in negligence for a risk of harm that has not actually occurred is subject to a further objection. The law of negligence does not make an actor an insurer against all possible harm he may cause. *Carter v. R. L. Jordan Oil Co., Inc., supra.* But when liability is imposed for the mere risk of harm without the occurrence of harm, the defendant in

effect becomes the insurer of all risks created by his alleged negligence. Unless every claim based on a mere risk of harm is to be actionable, some limiting principle is required.[10]

The difficulty is that there is no principled way to categorize types or degrees of risk for the purpose of establishing liability. To say the determination should be made on a case by case basis is to abandon the attempt at rule governed decision making in favor of ad hoc, post hoc imposition of liability by judges and juries. The calculation of risk is a complex, fact intensive, infinitely varied, and inevitably imprecise process. It is far beyond the competence of judges or juries. Even if all risks could be foreseen and precisely calculated, there would still be no certain, predictable standard for identifying which risks should be actionable. And there is no guarantee that tort rules of liability, if they could be fashioned, would redistribute these risks in the most rational, economic way.

In sum, the *Atlantis Condominium* approach replaces estalbished, workable, fair, and reasonably certain, principles of compensation with an uncertain, unpredictable quest to redistribute risks in advance of any actual personal injury. For this reason, we decline to follow *Atlantis Condominium*.[11]

### F.

The Owners finally suggest that the "economic loss rule" is out of step with the overwhelming trend of the modern

---

[10] The Maryland court itself recognized that not every claim based on mere risk of harm should be actionable:

It is the serious nature of the risk that persuades us to recognize the cause of action in the absence of actual injury. Accordingly, conditions that present a risk to general health, welfare, or comfort but fall short of presenting a clear danger of death or personal injury will not suffice. A claim that defective ... construction has produced a drafty condition that may lead to a cold or pneumonia would not be sufficient.

308 Md. at 35, n. 5, 517 A. (2d) at 345, n. 5. This statement, however, rests on no discernible principle. What is a "serious risk? By what standard(s) is it measured? What does "general health, welfare, or comfort" have to do with a personal injury to the plaintiff or his right to recover? Why would the risk of pneumonia not be sufficient? (Pneumonia may cause death.)

[11] Ironically, if we adopted the Maryland rule, it would not avail the Owners in this case. Their pleadings do not allege a risk of death or serious personal injury to themselves.

authorities. Our review of the cases shows the contrary. The great majority of courts deciding the issue in the past ten years have upheld the "economic loss rule."[12] As the court observed in *State of Louisiana ex rel. Guste v. M/V Testbank*, 752 F. (2d) 1019, 1023 (5th Cir. 1985) (en banc): "The push to delete the restrictions on recovery for economic loss lost its support and by the early 1940's had failed. In sum, it is an old sword that plaintiffs have here picked up." (Citation omitted.)

### G.

We hold the complaint fails to state a claim for negligence. The alleged defects in construction existed before the Owners acquired any interest in the building. In a sense, they "contracted in" to the defective building, for, apart from their contracts, they would be unaffected by the defendants' alleged negligence. Their right to a well constructed building arises from their contracts. For these reasons, their remedy lies in contract, not negligence.

---

[12] *See, e.g., East River S. S. Corp. v. Transamerica Delaval, Inc.*, 476 U. S. 858, 106 S. Ct. 2295, 90 L. Ed. (2d) 865 (1986); *State ex rel. Smith v. Tyonek Timber, Inc.*, 680 P. (2d) 1148 (Alaska 1984); *Sacramento Regional Transit Dist. v. Grumman Flexible*, 158 Cal. App. (3d) 289, 204 Cal. Rptr. 736 (1984); *Affiliates For Evaluation and Therapy, Inc. v. Viasyn Corp.*, 500 So. (2d) 688 (Fla. Dist. Ct. App. 1987); *McClain v. Harveston*, 152 Ga. App. 422, 263 S. E. (2d) 228 (1979); *Clark v. Int'l Harvester Co.*, 99 Idaho 326, 581 P. (2d) 784 (1978); *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69, 61 Ill. Dec. 746, 435 N. E. (2d) 443 (1982); *Dutton v. Int'l Harvester Co.*, 504 N. E. (2d) 313 (Ind. App. 1987); *Nebraska Innkeepers, Inc. v. Pittsburgh—Des Moines, Corp.*, 345 N. W. (2d) 124 (Iowa 1984); *Marcil v. John Deere Indus. Equip. Co.*, 9 Mass. App. 625, 403 N. E. (2d) 430 (1980); *Superwood Corp. v. Siempelkamp Corp.*, 311 N. W. (2d) 159 (Minn. 1981); *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S. W. (2d) 901 (Mo. 1986); *Nat'l Crane Corp. v. Ohio Steel Tube Co.*, 213 Neb. 782, 332 N. W. (2d) 39 (1983); *Local Joint Executive Bd. of Las Vegas, Culinary Workers Union, Local No. 226 v. Stern*, 98 Nev. 409, 651 P. (2d) 637 (1982); *Ellis v. Robert C. Morris, Inc.*, 128 N. H. 358, 513 A. (2d) 951 (1986); *Spring Motors Distrib., Inc. v. Ford Motor Co.*, 98 N. J. 555, 489 A. (2d) 660 (1985); *Schiavone Constr. Co. v. Elgood Mayo Corp.*, 56 N. Y. (2d) 667, 451 N. Y. S. (2d) 720, 436 N. E. (2d) 1322 (1982); *Hagert v. Hatton Commodities, Inc.*, 350 N. W. (2d) 592 (N. D. 1984); *Ore-Ida Foods, Inc. v. Indian Head Cattle Co.*, 290 Or. 909, 627 P. (2d) 469 (1981); *Lupinski v. Heritage Homes, LTD.*, 369 Pa. Super. 488, 535 A. (2d) 656 (1988); *Mid Continent Aircraft Corp. v. Curry County Spraying Serv., Inc.*, 572 S. W. (2d) 308 (Tex. 1978); *Blake Constr. Co., Inc. v. Alley*, 233 Va. 31, 353 S. E. (2d) 724 (1987); *see also Wells v. Clowers Constr. Co.*, 476 So. (2d) 105 (Ala. 1985).

## III.

Finally, the Owners claim they have an independent right to recover their damages from Fidelity under Harden's performance bond. They premise this claim on the further assertion that they are third party beneficiaries of the suretyship agreement between Plaza, Harden, and Fidelity and thus in the position of an obligee on the bond. While we doubt the validity of their third party beneficiary argument, we find it unnecessary to decide the issue.

A suretyship arises when one person, the surety, binds himself to a second, the obligee, to answer for payment of a debt or performance of an obligation owed to the obligee by a third person, the principal. *Philco Fin. Corp. v. Mehlman,* 245 S. C. 139, 139 S. E. (2d) 475 (1964). The surety undertakes with the principal that the obligation of the principal will be performed. *Id.* Without a valid, subsisting principal obligation there can be no suretyship. *First Nat. Bank of Tulsa v. Boxley,* 129 Okl. 159, 264 P. 184 (1927); *cf. Borg Warner Acceptance Corp. v. Sweatman,* 372 S. E. (2d) 99 (Ct. App. 1988) (security interest cannot exist without debt); *Glidden Coatings & Resins v. Suitt Constr. Co., Inc.,* 290 S. C. 240, 349 S. E. (2d) 89 (Ct. App. 1986) (mechanics' lien cannot exist without debt); *Blackwell v. Powell,* 289 S. C. 470, 346 S. E. (2d) 731 (Ct. App. 1986) (mortgage cannot exist without debt).

The surety's engagement is accessory to the obligation of the principal. If the principal is not liable to the obligee, then the surety is not liable either. *Greenville Airport Commission v. United States Fidelity & Guaranty Co. of Baltimore,* 226 S. C. 553, 86 S. E. (2d) 249 (1955).

In this case, the suretyship was in the form of a penal bond. Even if the Owners enjoyed the position of an obligee on the bond, their complaint states no basis for recovery against Fidelity. They have failed, for the reasons stated above, to establish any valid, subsisting liability to them on the part of Harden. Since Harden, as principal on the bond, is not liable to the Owners for the alleged defects in construction of the building, Fidelity, as surety, is also not liable. *Greenville Airport Commission v. United States Fidelity & Guaranty Co. of Baltimore, supra* (negligent performance of construction contract).

## IV.

We conclude the circuit court committed no error in granting the motions to dismiss as to these defendants. Accordingly, the judgment of the court is

Affirmed.

SANDERS, C. J., and GARDNER, J., concur.