687 S.E.2d 47

**Jeffrey M. SAPP, Jr., Appellant,**

v.

**FORD MOTOR COMPANY, Respondent.**

and

**Bryan D. Smith, Appellant,**

v.

**Ford Motor Company, Respondent.**

No. 26754.

Supreme Court of South Carolina.

Heard April 21, 2009.

Decided Dec. 21, 2009.

144

Karl S. Brehmer and L. Darby Plexico, III, both of Brown & Brehmer, Columbia, for Appellants Jeffrey M. Sapp, Jr. and Bryan D. Smith.

Curtis Lyman Ott and Carmelo B. Sammataro, both of Turner Padget Graham & Laney, of Columbia, for Respondent.

Ryan A. Earhart, Erin E. Richardson, and Patrick C. Wooten, all of Nelson, Mullins, Riley & Scarborough, of Charleston, for amicus curiae South Carolina Defense Trial Attorneys' Association.

Chief Justice TOAL.

In these consolidated appeals, the trial courts found the economic loss rule precluded Appellants' tort claims and granted judgment in favor of Respondent Ford Motor Company. We affirm the dismissal, and overrule *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 379 S.C. 181, 666 S.E.2d 247 (2008) to the extent it expands the narrow exception to the economic loss rule articulated in *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 384 S.E.2d 730 (1989).

## FACTUAL/PROCEDURAL BACKGROUND

### I. *Sapp* Appeal

In 2004, Appellant Jeffrey M. Sapp purchased a 2000 Ford F-150 truck from Atlantic Coast Construction for $5,000. The truck had 190,000 miles on it at the time of sale and Sapp bought it "as is." On May 16, 2005, while Sapp was driving

the truck, the cruise control stopped working, and the truck caught fire shortly after Sapp parked.

The fire did not injure Sapp or damage any property other than the vehicle itself. He filed a claim with his insurance company, and approximately three months later, the truck was repaired and returned to him. The repair costs were approximately $7,000.

Sapp filed suit against Ford alleging causes of action for negligence, strict liability, breach of warranty, and fraud/misrepresentation. Sapp alleged Ford knew of a design defect in the cruise control switch, which would short circuit and cause a fire in the engine compartment. The trial court granted summary judgment as to all causes of action and specifically found that the economic loss rule precluded the tort claims.

## II. *Smith* Appeal

On January 31, 2006, Appellant Bryan D. Smith's 2000 Ford F–150 truck caught fire and was completely destroyed. Smith filed suit against Ford alleging causes of action for negligence, strict liability, breach of warranty, and negligent misrepresentation. Smith alleged Ford knew of the same design defect alleged in Sapp's complaint. The master-in-equity dismissed Smith's tort claims pursuant to the economic loss rule.

### STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue of material fact and it is clear that the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the evidence and all inferences that can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Koester v. Carolina Rental Ctr.,* 313 S.C. 490, 493, 443 S.E.2d 392, 394 (1994).

Any party may move for a judgment on the pleadings under Rule 12(c), SCRCP. A judgment on the pleadings is proper where there is no issue of fact raised by the complaint that would entitle plaintiff to judgment if resolved in plaintiff's favor. *Russell v. City of Columbia,* 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991).

## LAW/ANALYSIS

■ Appellants argue the trial courts erred in granting summary judgment based on the economic loss rule. We disagree.

■ The economic loss rule is a creation of the modern law of products liability. Under the rule, there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself. *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 341, 384 S.E.2d 730, 734 (1989). In other words, tort liability only lies where there is damage done to other property or personal injury. *Id.*

■ The purpose of the economic loss rule is to define the line between recovery in tort and recovery in contract. Contract law seeks to protect the expectancy interests of the parties. Tort law, on the other hand, seeks to protect safety interests and is rooted in the concept of protecting society as a whole from physical harm to person or property. In the context of products liability law, when a defective product only damages itself, the only concrete and measurable damages are the diminution in the value of the product, cost of repair, and consequential damages resulting from the product's failure. Stated differently, the consumer has only suffered an economic loss. The consumer has purchased an inferior product, his expectations have not been met, and he has lost the benefit of the bargain. In this instance, however, the risk of product failure has already been allocated pursuant to the terms of the agreement between the parties. On the other hand, the parties have not bargained for the situation in which a defective product creates an unreasonable risk of harm and causes personal injury or property damage. Accordingly, where a product damages only itself, tort law provides no remedy and the action lies in contract; but when personal injury or other property damage occurs, a tort remedy may be appropriate.

In *Kennedy*, we held the economic loss rule does not preclude a homebuyer from recovering in tort against the developer or builder where the builder violates an applicable building code, deviates from industry standards, or constructs a house that he knows or should know will pose a serious risk of physical harm. Such an exception was and still remains necessary to protect homeowners. As explained in *Kennedy*,

the mechanics of home purchasing have evolved and drastically changed over the past two hundred years and, accordingly, courts have shifted from following the doctrine of *caveat emptor* ("let the buyer beware") to the doctrine of *caveat venditor* ("let the seller beware").[1] A home is typically an individual's single largest investment and is a completely different type of manufactured good than any other type of product that a consumer will buy. Moreover, courts have recognized that the transaction between a builder and a buyer for the sale of a home largely involves inherently unequal bargaining power between the parties. For these reasons, we created this narrow exception to the economic loss rule to apply solely in the residential home context.

The rule announced in *Kennedy* followed a long line of South Carolina cases directed toward protecting consumers only in the residential home building context,[2] and we noted that this holding followed cases from around the country expanding protections afforded to homebuyers and imposing tort liability on residential homebuilders.[3]

---

1. A more complete history of the evolution of the law in this area, along with several additional useful sources, can be found at *Kennedy*, 299 S.C. at 342–44, 384 S.E.2d at 735–36.

2. *See Roundtree Villas Ass'n, Inc. v. 4701 Kings Corp.*, 282 S.C. 415, 321 S.E.2d 46 (1984) (holding that where the lender undertook to repair defects in the housing units in order to facilitate further sales, the lender could be held liable in tort for negligent repairs); *Terlinde v. Neely*, 275 S.C. 395, 271 S.E.2d 768 (1980) (holding that a subsequent purchaser of a home may pursue a cause of action in contract or tort against a developer); *Lane v. Trenholm Bldg. Co.*, 267 S.C. 497, 229 S.E.2d 728 (1976) (holding that when a new building is sold, there is an implied warranty of fitness for its intended use which springs from the sale itself); *Rutledge v. Dodenhoff*, 254 S.C. 407, 175 S.E.2d 792 (1970) (recognizing that a builder-vendor of a new home gives its purchasers an implied warranty of fitness); *Rogers v. Scyphers*, 251 S.C. 128, 161 S.E.2d 81 (1968) (recognizing a builder's duty to refrain from constructing housing it knows or should know will pose a serious risk of physical harm).

3. *See Huang v. Garner*, 157 Cal.App.3d 404, 203 Cal.Rptr. 800 (1984); *Barnes v. MacBrown & Co.*, 264 Ind. 227, 342 N.E.2d 619 (1976); *Village of Cross Keys, Inc. v. The United States Gypsum Co.*, 315 Md. 741, 556 A.2d 1126 (1989); *Oates v. JAG, Inc.*, 314 N.C. 276, 333 S.E.2d 222 (1985); *New Mea Construction Corp. v. Harper*, 203 N.J.Super. 486, 497 A.2d 534 (1985); *Sewell v. Gregory*, 179 W.Va. 585, 371 S.E.2d 82 (1988).

In *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 379 S.C. 181, 666 S.E.2d 247 (2008), this Court was faced with the issue of whether to expand the *Kennedy* exception to the economic loss rule beyond the residential home building context to all manufacturers. The majority held that the economic loss rule will not preclude a plaintiff from filing a products liability suit in tort where only the product itself is injured when the plaintiff alleges breach of duty accompanied by a clear, serious, and unreasonable risk of bodily injury or death. The dissent argued that this decision not only broadly expanded the exception to the economic loss rule, but also completely altered the law on products liability in South Carolina. In our view, the traditional economic loss rule provides a more stable framework and results in a more just and predictable outcome in products liability cases. Accordingly, we overrule *Colleton Prep.* to the extent it expands the narrow exception to the economic loss rule beyond the residential builder context.

Furthermore, like the dissent in *Colleton Prep.*, we, too, are cautious in permitting negligence actions where there is neither personal injury nor property damage. Imposing liability merely for the creation of risk when there are no actual damages drastically changes the fundamental elements of a tort action, makes any amount of damages entirely speculative, and holds the manufacturer as an insurer against all possible risk of harm. *Carolina Winds Owners' Ass'n, Inc. v. Joe Harden Builder, Inc.*, 297 S.C. 74, 87, 374 S.E.2d 897, 905 (Ct.App.1988).

The *Kennedy* opinion did not signal a watershed moment in products liability law in South Carolina, nor did it alter the application of the economic loss rule in products liability cases. The *Kennedy* court specifically noted that "[t]he 'economic loss rule' will still apply where duties are created *solely* by contract. In that situation, no cause of action in negligence will lie." *Kennedy*, 299 S.C. at 347, 384 S.E.2d at 737. Several opinions from the federal courts that were issued prior to *Kennedy* found South Carolina's economic loss rule precluded a negligence action against a manufacturer,[4] and subse-

4. *See Laurens Electric Cooperative v. Altec Industries,* 889 F.2d 1323 (4th Cir.1989) (prohibiting a products liability claim where the only

quent cases found that, in light of and notwithstanding *Kennedy*, the economic loss rule prohibited negligence actions against a manufacturer where duties were created solely by contract and where the product only injured itself or where the damage was contemplated by the parties' contract.[5] We conclude the federal courts were correct in this regard.

At the time of our decision in *Kennedy*, we had no intention of the exception extending beyond residential real estate construction and into commercial real estate construction. Such a progression was in error and we now correct that expansion. Much less did we intend the exception to the economic loss rule to be applied well beyond the scope of real estate construction in an ordinary products liability claim. We emphasize the exception announced in *Kennedy* is a very narrow one, applicable only in the residential real estate construction context.

Turning to the merits of the instant appeals, we hold the trial courts properly granted judgment in favor of Ford on Appellants' tort claims. The only damage caused by the defect in the trucks was damage to the trucks themselves—purely an economic loss to Appellants. Therefore, the economic loss rule precludes Appellants' recovery in tort.

---

injury sustained was to the product itself); *2000 Watermark Ass'n v. Celotex Corp.*, 784 F.2d 1183 (4th Cir.1986) (prohibiting a tort claim against a defendant who negligently installed defective shingles pursuant to our economic loss rule); *Purvis v. Consolidated Energy Products Co.*, 674 F.2d 217 (4th Cir.1982) (holding under South Carolina's economic loss rule, a tobacco farmer could not maintain an action against a barn manufacturer because his only injury was an economic loss to his tobacco crop and the barn itself).

5. *See Palmetto Linen Service, Inc. v. U.N.X., Inc.*, 205 F.3d 126 (4th Cir.2000) (upholding the dismissal of plaintiff's negligence claim pursuant to South Carolina's economic loss rule where defendant's chemical dispensing system harmed only plaintiff's linens because the destruction of the linens was a "natural and foreseeable result of a malfunction" and the parties contemplated this allocation of risk in their contract); *Myrtle Beach Pipeline Corp. v. Emerson Elec. Co.*, 843 F.Supp. 1027 (D.S.C.1993), *af'd*, 46 F.3d 1125 (4th Cir.1995) (dismissing plaintiff's tort claim where defendant's product, an air eliminator, ruptured causing an oil spill because plaintiff's loss was only to the defective air eliminator since plaintiff did not own the property which the defective air eliminator damaged).

## CONCLUSION

For the above reasons, we affirm the ruling of the trial courts.

PLEICONES and KITTREDGE, JJ., concur.

WALLER, J., concurring in result only.

BEATTY, J., concurring in result only in a separate opinion.

Justice BEATTY, concurring in result.

I concur but write separately. This Court heralded a change in its view of the economic loss rule in *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 384 S.E.2d 730 (1989). The Court gave no indication that its new analytical framework was limited to residential housing construction. In proclaiming its new framework, the Court set about a review of the Court of Appeals' economic loss analysis in *Carolina Winds Owners' Ass'n v. Joe Harden Builder, Inc.*, 297 S.C. 74, 374 S.E.2d 897 (Ct.App.1988). In rejecting the opinion of the Court of Appeals, this Court concluded that the traditional analysis of the economic loss rule was problematical. The Court, referring to the analysis of the Court of Appeals, stated:

> Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract. This is so, the analysis provides, because his losses are more than merely "economic."
>
> **We find that this legal framework generates difficulties. This is so because the framework's focus is on consequence, not action.** Builder "A" and Builder "B" can be equally blameworthy, and build equally shoddy housing, but because Builder "A" 's negligence happened to be discovered early enough, no one was harmed. It hardly seems fair that Builder "A" should profit from a diligent buyer's discovery, or because he was fortunate.

**The framework we adopt focuses on activity, not consequence.** If a builder performs construction in such a way that he violates a contractual duty *only*, then his liability is only contractual. If he acts in a way as to violate a legal duty, however, his liability is both in contract and in tort.

. . .

A builder is no less blameworthy in such a case where lady luck has smiled upon him and no physical harm has yet occurred. **We discounted the necessity of showing physical harm in** *Terlinde*, 275 S.C. 395, 271 S.E.2d 768 (1980), in which we considered and declined to adopt arguments asserting the "economic loss" rule contained in the *Terlinde* briefs.

*Kennedy*, 299 S.C. at 345–46, 384 S.E.2d at 736–37 (emphasis added).

Today, this Court would overrule *Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 379 S.C. 181, 666 S.E.2d 247 (2008).[1] *Colleton* adheres to the *Kennedy* analysis framework. If it is wrongly decided, then *Kennedy* should be overruled as well and this Court should simply say that the economic loss rule is not applicable to residential home building. Of course, this would not explain the negative treatment of the rule in other areas such as professional services. *See Tommy L. Griffin Plumbing & Heating v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 55, 463 S.E.2d 85, 88–89 (1995) (finding design professionals, including engineers, may have a duty separate and distinct from contractual duties such that the economic loss doctrine would not prohibit a tort action); *Beachwalk Villas Condo. Ass'n v. Martin*, 305 S.C. 144, 146–47, 406 S.E.2d 372, 374 (1991) (finding a special duty for architects); *Lloyd v. Walters*, 276 S.C. 223, 226, 277 S.E.2d 888, 889 (1981) (finding an attorney liable for economic loss to a corporate shareholder when attorney breached a duty to the corporation); but *see McCullough v. Goodrich & Pennington Mortgage Fund, Inc.*, 373 S.C. 43, 53, 644 S.E.2d 43, 49 (2007)

---

1. *Colleton Preparatory Academy, Inc.* limited recovery to the cost of repair suffered by the plaintiff even in a tort action when there is no bodily injury. However, it did not require the plaintiff to wait until injury occurred to bring an action in tort.

(rejecting the notion of a special duty in the secured transactions arena).

The inconsistent treatment of the doctrine, by use of varying analytical frameworks, does not provide the bench and bar guidance in the proper application of the doctrine. The Court should simply pronounce a list of areas to which public policy prohibits the application of the economic loss doctrine and forego any legal analysis.