CASE No. 900.

STERNBERGER v. McSWEEN.

1. On appeal to the Circuit Court from a trial justice's judgment, where the amount involved exceeds $10, there must be a trial *de novo*, unless appellant states in his notice of appeal that such appeal is taken upon questions of law only.
2. The trial being *de novo* the parties are not restricted to a repetition of the evidence offered in the court below.
3. A lienee, under the agricultural lien law, is not entitled to recover from an innocent purchaser the value of property covered by the lien, sold by such purchaser before action brought.

4. An unrecorded chattel mortgage is of no avail against a subsequent purchaser for valuable consideration without notice.

5. Under the act of 1878, (16 *Stat.* 411,) which requires agricultural liens to be filed in the office of the register of mesne conveyance, and an index thereof to be kept by that officer, a lien filed and immediately thereafter withdrawn by the lienee and retained in his possession, is not constructive notice to third parties, notwithstanding the proper entry appears in the index.

6. The presumption of law that an officer has done his duty may be rebutted by proof.

7. The lienee cannot avoid the consequences of the register's default in permitting the lien to be taken from its file, when the removal was the act of the lienee himself.

8. This court cannot sanction the withdrawal of a paper from the files of a public office, even though by permission of the officer in charge.

Before HUDSON, J., Darlington, March, 1880.

This was an action instituted before a trial justice by H. Sternberger to recover from John McSween $45.30, the value of a bale of cotton purchased by McSween from one L. Morris, and re-sold before action brought. The cotton had been raised by Morris during the year 1879, and plaintiff claimed that it was subject to an agricultural lien in his favor, by virtue of the following agreement :

" Whereas, it is agreed by and between H. Sternberger, merchant, and L. D. Morris, all of said county and state, that the said H. Sternberger is to make advances of provisions and supplies to the said ———, not to exceed in amount seventy-five dollars ; the advances being for the purpose of enabling the said L. D. Morris more effectually to carry on the cultivation of his farm and produce a crop therefrom, in said county, on which he is engaged at work for the present year.

" Now know all men by these presents, that I, the said L. D. Morris, for and in consideration of the said advances to be made by the said H. Sternberger, whether at one time or at various times through the current year, have bargained, sold and pledged, and by these presents do bargain, sell and pledge unto the said H. Sternberger, all and every portion of the cotton, corn, peas, small grain, fodder, or other crops which I may produce on said

farm the present year, or so much thereof as may be necessary to fully pay and satisfy the amounts advanced to me under this agreement, save and except enough of same to satisfy the rent for the land, if there be any rent due on the same; and the said crop or crops to be prepared for market and delivered to said H. Sternberger between the months of August and October, the present year.

"In witness whereof, we, the contracting parties, have hereunto set our hands and seals this 13th day of January, 1879.

"H. STERNBERGER. [L. S.]
"L. D. MORRIS. [L. S.]

"Executed in the presence of
"C. ALEXANDER."

This paper was filed in the office of the clerk of the court, as *ex officio* register of mesne conveyances, and the following entry was made in the Index to Liens:

"L. D. Morris—H. Sternberger advances—$75.00—Jan'y 17, 1879."

Plaintiff had no knowledge, previous to the sale to defendant, that Morris was disposing of his crop, and defendant had no actual notice of plaintiff's lien until after he had bought and sold, in the usual course of business. The cotton was not planted at the date of the agreement.

The trial justice gave judgment for plaintiff for the sum demanded. The defendant gave notice of appeal, upon grounds which raised questions of law only, but he did not say so *in totidem verbis* in his notice.

In the Circuit Court the presiding judge held that there must be a trial *de novo*, and permitted proof to be offered that the agreement, after being filed and indexed, was immediately withdrawn by Sternberger and retained in his possession until after this action was commenced—a fact not shown in the trial below.

The Circuit judge held that the agreement was substantially an agricultural lien; that plaintiff could not recover the value of the cotton from defendant, who had sold before action brought; and that the index was not constructive notice to defendant of the lien. He gave judgment for defendant, with costs. Plaintiff appealed. The grounds of his appeal and the positions

assumed in the argument are sufficiently stated in the opinion of the court, except the last position, which is thus stated by appellant:

" We say that the clerk of the court is supposed to have done his duty ; after receiving and filing the paper, if he chose to give the same back to Sternberger, when it was his duty to retain the same, are we to suffer ?"

*Mr. J. J. Ward,* for appellant.

*Messrs. Boyd & Nettles,* contra.

July 30th, 1880. The opinion of the court was delivered by

McIVER, A. J. The object of this action is to recover the value of a bale of cotton, sold to the defendant by one Morris, upon which the plaintiff claimed to have a lien, by virtue of an agreement in writing, between himself and said Morris, which, it is insisted, amounts to what is commonly called an agricultural lien, under the provisions of the act of March 4th, 1878. 16 *Stat.* 410. This agreement, bearing date January 13th, 1879, a copy of which is set out in the case, was received in the clerk's office on January 17th, 1879, and so marked, and was indexed by the name of the parties, the amount of the advances and the date of its entry in that office; but as soon as it was indexed it was taken out of the office by the plaintiff and remained in his possession until the trial in the court below. The action was originally instituted before a trial justice, and, he having rendered judgment for the plaintiff, the defendant gave notice of appeal to the Circuit Court upon various grounds, which are fully set out in the case. That court proceeded to hear the case *de novo,* and, upon such hearing, rendered judgment for the defendant, and from that judgment this appeal has been taken.

Various exceptions were taken to the rulings and the final decision of the Circuit judge, and the questions thus raised will be considered in their order. The first question is as to the right of the defendant, who was the appellant in the Circuit Court, to have a trial there *de novo.* It is contended here that as the grounds of appeal from the judgment of the trial justice raised

questions of law only, the case could not be tried *de novo* in the Circuit Court. This position is based, as we understand it, upon the language of the proviso to Section 369 of the code of procedure. That section provides that on appeal from a judgment of a trial justice, where the amount in controversy exceeds the sum of $10, as it does here, " *a new trial shall be had in the Circuit Court* in the following appellate cases: 1. When the judgment was rendered upon an issue of law joined between the parties. 2. When it was rendered upon an issue of fact joined between parties, whether the defendant was present at the trial or not." Then follows the proviso, containing a mere permission to appellant to waive his right to a new trial, by stating in his notice of appeal that such appeal is taken upon questions of law only. The only person who can avail himself of this permission is the appellant, and unless he does so in the manner prescribed by the statute, the code declares that "a new trial shall be had" even in cases " where the judgment was rendered upon an issue of law joined between the parties." We are unable to perceive the force of the argument drawn from the fact that Section 370 of the code requires the appellant to serve a notice of appeal " *stating the grounds*" upon which the appeal is founded. The provisions of this section apply to *every* case in which there is an appeal, and it is manifest that there are *some* cases in which, upon appeal, the trial must be *de novo*, we do not see why this requirement should operate, in this case, to abridge or deny the right of the appellant, in the Circuit Court, to a new trial there.

The next position taken is, that even if the trial should be *de novo* the parties should have been restricted to the issues raised before the trial justice, and that the Circuit Court erred in permitting the defendant to offer additional testimony to that adduced before the trial justice. We do not see the force of this objection. When a new trial is had, it seems to us that it should be conducted just as if there had been no previous trial, and either party is at liberty to offer any competent testimony pertinent to the issues involved in the case. Here there were no formal pleadings before the trial justice. The plaintiff alleged that he was entitled to recover the value of the bale of cotton in question, and this being denied by the defendant, any testimony

tending to defeat the plaintiff's claim was certainly pertinent to
the issue which the court was called upon to try, and, if other-
wise competent, was clearly admissible, even though it may not
have been offered at the original hearing before the trial justice.

The next question to be considered is, whether the paper in
question, assuming it to be an agricultural lien, would authorize
the bringing of this action; in other words, whether the lien
provided for by the statute invests the lienee with such a right
of possession in the property covered by the lien, as would
entitle him to recover the value of such property from an inno-
cent purchaser who had previously disposed of it. An agricul-
tural lien, as it is commonly called, is the creature of the statute,
and to ascertain its nature and the rights which it confers, resort
must be had to the terms of the statute. Looking into the statute
we do not find that it purports to give such a paper the incidents
of a chattel mortgage. It does not confer upon the lienee the
right to the possession of the property covered by it even after
default and while the property still remains in the possession of
the lienor, and, certainly, not while it is in the possession of an
innocent purchaser. The remedy which the statute provides is
of a totally different character. So far from authorizing the
lienee to seize the property covered by the lien, even after default,
it expressly provides that such seizure shall be made by an offi-
cer of the law, under a warrant issued by another officer. In
this respect the lien provided for by the statute differs very ma-
terially from a chattel mortgage. One who undertakes to
enforce his rights under a lien which is the creature of a statute,
must confine himself to the remedy provided by the statute. The
right is derived solely from the statute, and the remedy resorted
to must be that furnished by the statute. The attempt to invest
an agricultural lien with the qualities of a chattel mortgage, is
an attempt to interpolate into the statute provisions which the
legislature has not seen fit to adopt, for, certainly, if that body
had designed to give an agricultural lien the qualities of a chattel
mortgage, it would have been very easy to have said so. On the
contrary, however, the agreement provided for by the statute,
which creates the lien, lacks one of the qualities of a chattel
mortgage, which has been held (*Green* v. *Jacobs*, 5 *S. C.* 283,)

to be essential to invest the mortgagee with the right to the possession of the property, in that it does not contemplate any provision whatever for the transfer of the title; and, as we have seen, the remedy provided by the statute manifestly contemplates no change in the title, but, on the other hand, presupposes the continuance of the title in the lienor, subject, however, to the lien, until it is transferred by the execution of the process of the law, just as in the case of property covered by the lien of a judgment or execution, the title to the property remains in the judgment debtor until it is transferred by a sale under process of law; and one who purchases from the judgment debtor takes subject to the lien, which follows the property into whosoever hands it may go, but the purchaser, after he has disposed of it, cannot be made liable for the value of the property or for the proceeds of its sale. *Paysinger* v. *Shumpard*, 1 *Bail.* 237. The foregoing remarks are based upon the character of the agreement contemplated by the statute; and the fact that the agreement in the case now under consideration does contain words purporting to transfer the title, cannot affect the argument as to the proper construction of the statute and the rights which it was designed to confer. These words might, possibly, have the effect of converting the paper in question into a chattel mortgage, as is argued by the respondent, though upon this point also we are inclined to agree with the Circuit judge, and if they should have such effect, then, manifestly, the plaintiff could not maintain his action. For, aside from the question whether the paper could be sustained as a chattel mortgage upon a crop not yet planted, as against the rights of a third person, (a question which we do not propose to consider, as all the facts necessary for its proper determination are not before us,) it is not pretended that it ever was recorded in the manner in which mortgages are required to be recorded, and, therefore, could avail nothing against the defendant who is a subsequent purchaser for valuable consideration without notice.

Another question has been raised by the grounds of appeal which, under the view we have taken, it is not absolutely necessary to decide, but as the point raised is one of importance it may be well for us to express our views. That question is

whether the paper, considered as an agricultural lien, was properly recorded so as to affect subsequent purchasers with constructive notice. To state the question more precisely—was the entry of this paper in the office of the clerk of the Court of Common Pleas, who, in the county where the parties resided is *ex officio* register of mesne conveyances, and indexing it as was done in this case, a sufficient compliance with the sixth section of the act of March 4th, 1878, (16 *Stat.* 411,) or was it necessary that the paper should remain on file in that office? The act requires that every lien "shall be filed in the office of the register of mesne conveyances for the county in which the lienor resides, * * * and he shall keep an index of all such liens so filed, * * * and this shall be a sufficient record of the same." It is argued that the word "this" refers only to the indexing required and not to the filing. This appears to us to be a forced and unnatural construction. The legislature manifestly designed to dispense with the usual mode of recording by copying the paper at length, and to substitute another simpler and cheaper, to wit, by filing the original paper and indexing it, and then declared that "*this*"—that is the new mode, not merely *one* of the incidents of the new mode, the indexing, but both, the filing and the indexing, should be a sufficient record.

Again, it is argued that filing a paper in the clerk's office does not necessarily convey the idea that it is to remain there, but that it may be marked filed and taken out of the office; and this view, it is urged, is supported by the prevalent practice in this state, to take papers from the clerk's office after they have been marked filed therein. There is no evidence in this case of any such custom, and if we were to assume its existence, we do not feel at liberty to give it judicial sanction. When papers are placed on file in a public office, they become public records, open to the inspection of the public, under proper regulations; but if private individuals are at liberty to remove them whenever they see fit, they necessarily lose their character as public records. They are in the custody of the officer in whose office they are filed, and he is responsible for them. If he chooses to allow individuals to remove the originals rather than to require them to procure copies, that is a matter of mere favor and not of right,

and while we may not feel called upon to volunteer a condemna-- tion of such a practice, we certainly cannot be expected to give it judicial sanction. As is said in 1 *Bouv. Law Dict.* 524: " A paper is said to be filed when it is delivered to the proper officer and by him received *to be kept on file.*" In addition to this the proper office of an index is to afford a ready means of finding something else which contains the information desired, and if that something else is not in the office where the index is kept, it would not serve the purpose for which it is intended. The statute does not prescribe how the index should be kept, and the presumption is that it was intended to be kept in the usual way, and if so kept it would not afford such information as the statute evidently designed should be furnished to the public. The fact that the index in this particular case was fuller than usual cannot affect the question as to the proper construction of the statute, which requires a mere index, not an abstract.

Finally, it is argued that the presumption is that the clerk did his duty, and at all events the appellant should not suffer for the clerk's default. There is no doubt that in the absence of evidence to the contrary the presumption is that a public officer has done his duty, but here the proof shows the contrary, and there is no room for the presumption invoked. As to the other branch of the proposition, that is likewise disposed of by the evidence, which shows that it was by the appellant's own act. and consent that the paper was removed from the office after it was indexed, and retained in his own custody. But even if it was the default of the clerk, it is difficult to see how that could affect McSween. If a party delivers a mortgage or other paper to the clerk to be recorded, and he neglects to do so, we can very readily understand how he might be made responsible for any damages occasioned by such a neglect of duty, but how an inno- cent third person could be made to suffer for such a neglect of duty on the part of a public officer it would be more difficult to comprehend.

The judgment of the Circuit Court is affirmed.

WILLARD, C. J., and McGOWAN, A. J., concurred.