1729

LOYD'S INC., by its Assignee, RICHARDSON CONSTRUCTION COMPANY OF COLUMBIA, S.C., INC., Appellant v. Ed GOOD and Robert Small, Pickens Partnership and McCrory Construction Company, Inc., Respondents.

(412 S.E. (2d) 441)

Court of Appeals

*Donald E. Jonas*, Columbia, *for appellant.*

*Nikki G. Setzler*, and *Melody L. James*, West Columbia, and *Robert C. Brown*, Columbia, *for respondents.*

Heard Oct. 16, 1991.

Decided Dec. 2, 1991.

CURETON, Judge:

This action was commenced by Loyd's, Inc. by its assignee, Richardson Construction Company (Richardson), wherein Loyd's claimed it had sustained siltation of its pond downstream from property owned by Pickens Partnership on which McCrory Construction Company, the general contractor, was building a K-Mart store. The trial court granted summary judgment to the partnership and the general contractor. Richardson appeals. We affirm.

Ed Good and Robert Small are the principals in Pickens Partnership (owners). McCrory Construction Company (McCrory) was the general contractor for the project. Appellant, Richardson Construction Company (Richardson), was the subcontractor on the project for the grading, storm drainage installation, and paving. Loyd's, Inc. owned a pond downstream from the project.

Loyd's made an informal claim against McCrory and

Richardson for siltation damages to its pond caused by run-off from the project site. Richardson and Loyd's entered into an agreement entitled "Covenant Not To Sue and Assignment of Cause of Action" (Agreement). Under the terms of the Agreement, Richardson paid Loyd's $21,000 in consideration for what purports to be a covenant not to sue for the siltation damages and an assignment of all claims arising from the actions of the owners and contractors, except for those expressly reserved by Loyd's. The owners and McCrory refused to participate in the settlement.

Richardson, as assignee of Loyd's, brought the present suit against the owners and McCrory for damages resulting from the siltation. It alleged causes of action in negligence, nuisance, and trespass. It also alleged certain statutory violations. The trial judge granted summary judgment to the owners and McCrory on two separate grounds: (1) the Agreement was a full release of all claims by Loyd's and, therefore, it also released the owners and McCrory as a matter of law; and (2) the Agreement was an impermissible attempt to circumvent the then existing rule against contribution among joint tortfeasors. Richardson appeals these rulings along with the trial court's use of unfiled answers to interrogatories and responses to requests to produce in arriving at its decision.

We first address the question of whether the trial court was prohibited from utilizing answers to interrogatories and responses to requests to produce which were made by Richardson in response to discovery requests of owners and McCrory. These responses were not filed with the clerk of court at the time of the summary judgment hearing. The record is not quite clear when the answers and responses were furnished to the court. In the trial court's order settling the record on appeal, the parties argued the propriety of including these documents in the record on appeal. The court ruled that while South Carolina Rule of Civil Procedure 26(g)(1) requires these documents to be filed with the clerk of court when they are to be used at a hearing or at trial the requirements of the rule were satisfied by handing the documents to the court at the time of the hearing. Moreover, it reasoned Richardson was not surprised by the use of the documents because Richardson knew from various memo-

randa submitted in support of the motions for summary judgment that these documents formed the basis for the motions.

South Carolina Rule of Civil Procedure 56(c) requires summary judgment motions and, inferentially, supporting materials to be on file when they are to be relied upon at a summary judgment motion hearing. To be on file, we hold they ordinarily must have been filed. Rule 26(g)(1) specifically requires original discovery requests and responses to be filed with the clerk of court when they are to be used at a hearing or trial. What then is the meaning of the word filed? As indicated in *King v. Atlantic Coast Line R.R. Co.*, 86 S.C. 510, 68 S.E. 769 (1910), the word "file" is derived from the latin word "filum" meaning a thread. According to ancient practice, papers were filed when placed upon a cord or wire by the proper custodian for safe keeping and convenient reference. *Id.* at 512, 68 S.E. at 770. In *Sternberger v. McSween,* our Supreme Court defined "filing a paper" by stating "a paper is said to be filed when it is delivered to the proper officer and by him received to be kept on file." *Sternberger v. McSween,* 14 S.C. 35, 42 (1880) (quoting Bouv. Law Dictionary). As established by Rule 26, the clerk of court is the proper officer to receive the instant documents. However, as here, where the court file is in the physical custody of the trial judge we hold she had the discretion and the inherent power to receive the documents and make them a part of the file provided their receipt did not prejudice Richardson. See *Weiss v. Chevron,* 204 Cal. App. (3d) 1094, 251 Cal. Rptr. 727 (1988); see also *Calhoun v. Bone,* 189 Ga. App. 396, 375 S.E. (2d) 871 (1988) (the trial court is to make the summary judgment decision as to what is "on file").

Further, we see no prejudice to Richardson since it prepared the answers and responses. See *Morgan v. Allstate Ins. Co.*, 393 So. (2d) 324 (La. App. 1980) (no prejudice shown where although the plaintiff was not served with copies of interrogatories and answers he knew of their existence and could have obtained copies). Richardson's argument it would have supplemented discovery responses if it had known the owners and McCrory intended to rely on the answers to interrogatories is without merit in view of the requirement of Rule 33(b). That rule requires new information coming into the possession of Richardson to

have been promptly transmitted to the owners and McCrory.
We next consider the trial court's ruling that the
agreement was a full release of all of Loyd's claims for
damages caused by the work performed by the owners,
McCrory, and Richardson. In 1988, our state legislature
created a right of contribution among joint tortfeasors. Act
No. 432, 1988 S.C. Acts 2891, 2896 (codified at *S.C. Code Ann.*
§§ 15-38-10 through 15-38-70 (Sup. 1990)). The Act is,
however, only applicable to causes of action arising on or after
April 5, 1988. *S.C. Code Ann.* § 15-38-10 (Supp. 1990). Prior to
the effective date of the Act, there was no right of
contribution among joint tortfeasors. *Adcox v. American
Home Assur. Co.*, 258 S.C. 331, 188 S.E. (2d) 785 (1972).
Concomitantly, before the effective date of the Act, the law
was clear that the release of one tortfeasor served to release
others who wrongfully contributed to the plaintiff's injuries
only if the injured party and released party intended that
result, or the injured party in fact received full compensation
for his injuries amounting to a satisfaction. *Bartholomew v.
McCartha*, 255 S.C. 489, 179 S.E. (2d) 912 (1971). Following
this reasoning, a covenant not to sue or a release which is not
effective as a full release of all tortfeasors is a satisfaction
"pro tanto" and reduces the amount of damages recoverable
against the nonsettling tortfeasors by the amount of the
consideration for the release. *McWhirter v. Otis Elevator Co.*,
40 F. Supp. 11 (D.S.C. 1941).

By examining the Agreement, the answers to
interrogatories, responses to requests for production of
documents, and statements (amounting to admissions)
made by Richardson's attorney at the motion hearing, we
think it is clear Richardson fully satisfied Loyd's claim with
the expectation it could somehow recover a portion of the sum
from the owners and McCrory.[1] The purpose of summary

---

[1] The following exchange between Richardson's attorney and the court
amply demonstrates this point:

COURT: You mean Richardson was brave enough to take the whole deal
and settle for everything in hopes that they (sic) could come back and get
a contribution by these other people.

MR. JONAS: Richardson, in fact, took the responsibility to go in and deal
with this gentlemen.

THE COURT: . . . . and they were in such good faith that they said, well,
we know we owe this little bit, but we are going to go ahead and pay it

judgment is to obviate delay where there is no material issue of fact. *Hammond v. Scott,* 268 S.C. 137, 232 S.E. (2d) 336 (1977). We are convinced no material issue of fact exists as to whether Loyd's claim was fully satisfied by Richardson for the sum of $21,000. We do not think further development of the facts in this case would be helpful to clarify the law to be applied.

Richardson also argues that because its complaint seeks damages accruing after the effective date of the South Carolina Contribution Among Tortfeasors Act it is entitled to seek contribution for those damages from the owners and McCrory. The Agreement states Loyd's covenants not to sue Richardson for damages of any nature up through the date of the agreement[2] except for post-construction damages. Richardson's complaint states the Agreement assigned it "all right and interest of Loyd's Inc. by assignment dated August 31, 1987, resulting from the siltation of Patterson's (sic) pond between November, 1986 and April, 1987." In any event, neither the complaint nor the Agreement relate to the assignment of causes of action occurring after the effective date of the Act.

Having decided the Agreement represented a full satisfaction of all of Loyd's claims for damages to its land during the period covered by the Agreement, we need not decide whether the Agreement is in contravention of the common-law rule against contribution among joint tortfeasors. Accordingly, the order of the trial court is affirmed.

Affirmed.

SHAW and BELL, JJ., concur.

---

off, because we are then go (sic) back and sue them for all or the rest of this that it didn't cover.

MR. JONAS: What they offered to do is split it by thirds. Yeah, they—

THE COURT: So they paid the three thirds in hopes that they could come back and get two thirds against somebody else?

MR. JONAS: That's basically how this worked out.

THE COURT: Mr. Jonas.

MR. JONAS: Mam, that's not only true, its the gospel truth.

[2] There is some question about the effective date of the agreement. Because the agreement was not signed by Richardson until December 16, 1987, we consider that to be the effective date of the agreement.