# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

James E. Carroll, Jr., Appellant,

v.

Isle of Palms Pest Control, Inc., SPM Management Company, Inc. and Terminix Service, Inc., Defendants,

Of which Isle of Palms Pest Control, Inc. and SPM Management Company, Inc. are Respondents.

Appellate Case No. 2019-000797

———————

Appeal From Charleston County
Roger M. Young, Sr., Circuit Court Judge

———————

Opinion No. 6011
Heard June 16, 2022 – Filed August 9, 2023

———————

**AFFIRMED**

———————

Robert T. Lyles, Jr., of Lyles & Associates, LLC, and Jody Vann McKnight, of McKnight Law Firm, both of Mount Pleasant; and Rose Beth Grossman Smith, of Greenville, all for Appellant.

Trent M. Kernodle and Stephen Michael Kozick, both of Kernodle Coleman, of James Island, for Respondent Isle of Palms Pest Control, Inc.; Robert Michael Ethridge, of Ethridge Law Group, LLC, and Mary Skahan Willis, both of Mount Pleasant, for Respondent SPM Management Company, Inc.

**VINSON, J.:**  In this civil action, James E. Carroll, Jr. appeals the circuit court's order granting partial summary judgment in favor of Isle of Palms Pest Control, Inc. (IOP) and SPM Management Company, Inc. (SPM) (collectively, Respondents).  Carroll argues the circuit court erred in granting partial summary judgment in favor of Respondents as to his negligence claims when (1) the circuit court incorrectly held the economic loss rule applied; (2) Respondents owed Carroll duties created by the South Carolina Department of Pesticide Regulations (SCDPR) and industry standards that were separate and distinct from the contract; (3) the circuit court incorrectly limited Carroll's contractual remedy to $250,000; (4) by limiting Carroll's claims to breach of contract, the circuit court nullified the regulatory mandate requiring pest control applicators to carry insurance for the protection of homeowners because breach of contract claims are excluded from coverage; and (5) the circuit court's findings of fact and conclusions of law in its order denying his motion to reconsider were false and pretextual.  We affirm.

## FACTS AND PROCEDURAL HISTORY

This action arises from an alleged termite infestation and resulting damage to Carroll's residence.  Carroll purchased 11 Tabby Lane on Isle of Palms (the Property) in November 2002.  In February 2003, Carroll entered into a termite treatment and repair bond agreement (the Termite Contract) with IOP, a company owned and operated by Vincent Sottile.  According to its terms, IOP was to treat the Property for subterranean termites, reinspect annually for infestations, and apply any necessary additional treatments, provided Carroll paid the annual reinspection fee of $250.  Respondents agree that although Carroll did not sign the Termite Contract, it was a valid contract that remained in effect from February 2003 until the filing of this action.  In June 2011, SPM was formed and took over IOP's termite services at the Property under the Termite Contract.  Thereafter, SPM sold its assets to Terminix Services, Inc. (Terminix) in May 2013, and Terminix assumed the termite services at the Property.  According to Carroll, Terminix inspected the Property in January 2014 and discovered "substantial live termites and termite damage."  Carroll claimed Terminix treated the Property at that time and that in January 2015, Terminix again discovered and treated for live, active termites when it performed its annual reinspection.  Carroll hired professional contractors to complete an inspection of the Property, and they discovered the home was "inundated" with subterranean termites.  Carroll claimed this demonstrated the treatments were not effective and that Respondents and Terminix were responsible for making repairs.

Carroll commenced this action against IOP, SPM, and Terminix[1] in November 2015 and filed a second amended complaint on July 27, 2016, asserting claims for breach of contract and negligence based on the alleged termite infestation and resulting damage to the Property.  Carroll alleged IOP and SPM were negligent in failing to (1) properly inspect, treat, or apply treatment to the Property; (2) discover active termites in the Property; (3) train its employees regarding pest control management; (4) comply with South Carolina law and regulations pertaining to inspection for and treatment of termites; and (5) use the degree of care and caution that a reasonable, similarly situated termite pest management company would use.  Carroll sought damages including the cost of repair to return the Property to its prior condition or, alternatively, for the replacement of the structure and for the diminished fair market value of the Property resulting from having to disclose termite damage to future potential homebuyers.

SPM moved for partial summary judgment on February 5, 2019—fourteen days before trial was scheduled to start—and argued it was entitled to summary judgment as to Carroll's negligence claims because he failed to allege SPM owed him any legal duties apart from those set forth in the Termite Contract and such claims were therefore barred by the "economic loss rule."[2]  In addition, SPM argued it was entitled to summary judgment on the issue of damages and Carroll's damages award was limited to $250,000 as set forth in the Termite Contract.

According to Carroll, he emailed a copy of his memorandum in opposition to SPM's motion for partial summary judgment to the circuit court's law clerk and opposing counsel on February 18, 2019—two days before the hearing.  Carroll included several exhibits with the memorandum, including excerpts of deposition testimony from Sottile and Carroll's experts, Cecil Hernandez and Maxcy P. Nolan, III.  Carroll acknowledged, however, he did not file this submission until February 22, 2019, two days after the hearing.

---

[1] Terminix is no longer party to this lawsuit.

[2] *See, e.g.*, *Sapp v. Ford Motor Co.*, 386 S.C. 143, 147, 687 S.E.2d 47, 49 (2009) ("The economic loss rule is a creation of the modern law of products liability. Under the rule, there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself.  In other words, tort liability only lies where there is damage done to other property or personal injury." (citation omitted)).

In his memorandum, Carroll argued regulation 27-1083[3] required a termite prevention company to maintain records for two years or the duration of the contract, whichever is longer. In addition, he argued regulation 27-1085(D)[4] required all chemicals used on a property to be used according to label instructions and documented with a special "Termiticide Disclosure Form." He stated that, according to Sottile's deposition, Sottile "decided to stop monitoring and protecting [the P]roperty with the Exterra Bait Stations[] and instead . . . applied Termidor termiticide to the ground" sometime in 2008. Carroll stated Sottile testified he "beaded" termiticide around the Property in 2003 but did not inform Carroll or "file the appropriate 'Termiticide Disclosure Form.'"

Carroll argued the economic loss rule did not apply and he could sue in tort and contract. He argued Hernandez's deposition testimony showed the use of termiticide treatment did not meet industry standards and that Sottile's trial testimony would show the treatment was not "an application according to labeled instructions" in violation of the SCDPR regulations. Finally, Carroll argued he was entitled to damages up to $250,000 under the contract for each year the contract was violated.

---

[3] *See* S.C. Code Ann. Regs. 27-1083(C)(3)(b) (2011) ("Records of pesticide applications must be maintained by the company, firm, or licensed commercial or noncommercial applicator as detailed below: . . . For post-construction termite-control treatments, including the installation of bait systems and baits containing active ingredients, records of termiticide application must be maintained for a period of two (2) years from the date of application or as long as a continuing warranty or contract exists, whichever is longer . . . .").

[4] *See* S.C. Code Ann. Regs. 27-1085(D) (Supp. 2022) ("The chemicals, methods, and systems permitted in the control of termites or other wood-destroying organisms shall be only those pesticides which are registered in South Carolina for that use. The chemical and control methods must be used in the proper proportions and in the quantities and manner directed on the label or in these Standards."); *see also* Regs. 27-1085(D)(6) ("All applications of termiticides, including re-treatments and supplemental or 'booster' treatments, must be properly recorded on the Record of Termiticide Use form published by [SCDPR] or in an alternative manner acceptable to [SCDPR]. These record-keeping requirements for termiticide applications apply to bait installations and wood-treatment methods as well as to liquid termiticides. These records must be maintained by the firm as specified in [regulation] 27-1083[(C)] above and must be presented to the Director or his authorized representatives for review and duplication upon their request at the expense of [SCDPR].").

The circuit court heard SPM's motion for partial summary judgment on February 20, 2019.  During the hearing, IOP stated it joined in SPM's motion on the same grounds.  SPM argued the case *Duc v. Orkin Exterminating Co.*,[5] in which the South Carolina district court limited a plaintiff's claims to those available under contract, supported its position as to Carroll's negligence claims.  Carroll argued he and IOP entered into an exterior bait station agreement and without telling Carroll, IOP undertook a duty separate from the contract "of putting termiticide around the home."  He acknowledged "it was all related to . . . keeping termites out of the [P]roperty" but argued "the agreement did not call for that."  Carroll referenced Sottile's deposition testimony during the hearing and stated Sottile "sa[id] he beaded" the termiticide and that Carroll's experts—Hernandez, Nolan, and James Wright—indicated in their depositions that such treatment was "not within the standards."  Carroll argued regulation 27-1085 required termiticide to be applied "according to the label in the context in which it[ wa]s being done" and here it was applied when there were no active termites.  Carroll asserted IOP also failed to comply with regulation 27-1083 because it applied the termiticide without informing him or completing a Termiticide Disclosure Form.  He maintained the economic loss rule did not apply because the losses were more than merely economic.  Carroll argued he was entitled to $250,000 in damages for every year the Termite Contract was renewed.  He additionally argued, in general terms, that insurance carriers did not provide coverage for breach of contract and this essentially "le[ft] homeowners with no money ever" if they were forced to only pursue contract remedies and were not permitted to sue for negligence.

At the conclusion of the hearing, the circuit court ruled in favor of Respondents. The court ruled that based upon the record, Carroll failed to demonstrate any negligent act that arose outside of the contract.  The circuit court indicated its record included the file, the exhibits, and the exhibits submitted with the memorandum in opposition to partial summary judgment.  Thereafter, the circuit court issued a written order granting Respondents' motion for partial summary judgment.  Citing to *Dixon v. Texas Co.*[6] and *Duc*, the circuit court ruled Carroll's remedy was for breach of contract because Respondents owed no duty distinct from the contract.  The circuit court noted it reviewed the record, including

[5] 729 F. Supp. 1533, 1535 (D.S.C. 1990).
[6] 222 S.C. 385, 389, 72 S.E.2d 897, 899 (1952) ("Ordinarily, where there is no duty except such as the contract creates, the plaintiff's remedy is for breach of contract, but when the breach of duty alleged arises out of a liability independently of the personal obligation undertaken by contract, it is a tort.").

Carroll's second amended complaint and the "motions and memorandum of law filed in support therewith." It then concluded Carroll's claims arose from the Termite Contract and his negligence claim must be dismissed as a matter of law because it was "barred by the economic loss rule."

Carroll filed a motion to reconsider. First, he argued the circuit court should acknowledge its review and consideration of his memorandum in opposing partial summary judgment, including exhibits. Second, he argued his claims for negligence arose out of duties created by the SCDPR regulations, which were separate and distinct from any duties owed under the contract. Specifically, he argued a duty arose under regulation 27-1085(A), (B)(2), and (D). Next, Carroll again argued the economic loss rule did not bar his negligence claims and his contractual remedies amounted to $250,000 per year for every year the contract was renewed. He additionally asserted Respondents' counsel admitted their insurance policy did not contain liability insurance for breach of contract. Carroll therefore contended that eliminating his tort claims would nullify the regulations requiring pest control applicators to carry insurance for the protection of homeowners and thus violated public policy. He attached several exhibits with his motion to reconsider, including a complete transcript of Nolan's November 2016 deposition testimony; a complete transcript of Wright's deposition testimony, including 140 pages of exhibits; a complete transcript of Sottile's deposition testimony; a complete transcript of Hernandez's deposition testimony; and a copy of his memorandum in opposition to the motion for partial summary judgment, including exhibits.

The circuit court denied Carroll's motion to reconsider. The circuit court rejected his request to consider his memorandum in opposing partial summary judgment and attached exhibits because it was neither filed prior to the hearing nor provided to the court at the hearing. It reasoned that pursuant to Rule 56(c), SCRCP, it had discretion to make the documents part of the file only if it did not prejudice Respondents. The circuit court concluded Respondents would "clearly be prejudiced" if it amended its order to include the unfiled memorandum and exhibits. In addition, the circuit court found Carroll attempted to raise the following as new legal arguments in his motion to reconsider: (1) Respondents owed duties created by the SCDPR and industry standards; (2) Respondents owed duties created by SCDPR regulation 27-1085(A) and (B)(2), neither of which he referenced in his memorandum in opposition; (3) the termite industry is a regulated industry and therefore falls within the narrow exception to the economic loss rule

set forth in *Kennedy*[7]; and (4) Respondents owed him duties arising from regulatory and industry standards for application of termiticide separate and apart from the contractual duties under the Termite Contract. The circuit court declined to consider these arguments because Carroll failed to raise them during the hearing on the motion for partial summary judgment. The circuit court further declined to consider the additional exhibits because the exhibits Carroll attached to his memorandum in opposition included only excerpts from Hernandez's, Nolan's, and Sottile's depositions and did not reference Wright's deposition at all. The circuit court concluded that even if it were to take such arguments and evidence into consideration, it would still find Carroll's arguments were without merit. The circuit court stated the Termite Contract governed the relationship between Carroll and Respondents, Respondents agreed to inspect and treat the Property for termites and repair any damages resulting from termites up to $250,000, and South Carolina law did not recognize a tort duty under these circumstances. The circuit court concluded the economic loss rule barred Carroll's tort claims and that the exception in *Kennedy* did not apply because it was limited to residential housing construction. This appeal followed.

**ISSUES ON APPEAL**

1. Did the circuit court err in finding *Duc v. Orkin Exterminating Co.* and the economic loss rule applied to Carroll's negligence cause of action?

2. Did the circuit court err in granting Respondents' motion for partial summary judgment as to Carroll's negligence claim when SCDPR regulations and industry standards created a duty separate and distinct from duties owed under the contract?

3. Did the circuit court err in limiting the contractual remedy to $250,000 total, rather than $250,000 per year for each year the contract was renewed?

4. Did the circuit court err in limiting Carroll's claims to breach of contract when Respondents' insurance coverage excluded breach of contract from coverage?

---

[7] *Kennedy v. Columbia Lumber & Mfg. Co.*, 299 S.C. 335, 345-47, 384 S.E.2d 730, 736-37 (1989) (holding the economic loss rule does not prevent the imposition of tort liability upon a residential homebuilder when the builder violates a legal duty and that the "violation of a building code" or failure to "undertake construction commensurate with industry standards" violates a builder's legal duty).

5.  Should this court reject the findings and conclusions of the circuit court's order denying reconsideration because they were false and pretextual?

## STANDARD OF REVIEW

"When reviewing a grant of summary judgment, an appellate court applies the same standard used by the trial court." *Town of Summerville v. City of North Charleston*, 378 S.C. 107, 109, 662 S.E.2d 40, 41 (2008).  "[S]ummary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Id.* at 110, 662 S.E.2d at 41; *see also* Rule 56(c), SCRCP ("[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.").  "In determining whether any triable issues of fact exist for summary judgment purposes, the evidence and all the inferences which can be reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party." *Law v. S.C. Dep't of Corr.*, 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).

## LAW AND ANALYSIS

### A.  Negligence Claims

Carroll argues the economic loss rule does not apply to his claims because the rule precludes tort liability when a defective product causes injury to the product itself and whether it applies to services is not settled law.  He argues his claims arise from Respondents' failure "to properly perform pest control services at the Property" in conformance with industry standards and regulations.  Citing to *Kennedy*, Carroll further argues that when private parties contract in a "regulated industry," and a party violates the applicable regulations in performing the contract, the aggrieved party has a cause of action in tort.  He contends that pursuant to *Kennedy*, regulations and industry standards create legal duties and Respondents were liable in tort because they violated these duties.  Carroll contends the circuit court erred in relying on *Duc* because it did not involve alleged regulatory violations or allegations of other breaches of duties originating outside of the contract.  He additionally asserts the economic loss rule did not apply to his claims because he sought damages for harm to the Property.

Carroll next argues that under regulation 27-1085(B)(2),[8] the breach of a contract is "a dual regulatory violation." He contends "evidence of a regulatory violation is evidence of negligence" and the duties arise out of both contract and regulation, allowing him to maintain causes of action for negligence and breach of contract pursuant to *Kennedy*. In addition, Carroll asserts that when Respondents applied termiticide, they undertook duties pursuant to regulatory requirements and industry standards for application of termiticide that were "separate and apart from the contractual and regulatory duties inherent to the [Termite Contract]." He argues the expert testimony of Wright, Nolan, and Hernandez created questions of fact as to whether Respondents violated "pesticide application and operator regulations as part of the contractual and extra-contractual activities in relation to the Property." Carroll asserts regulation 27-1083 requires records of treatment or bait station monitoring be kept for as long as the contract is in place and that Nolan testified IOP violated the regulations by failing to document such treatment. Carroll argues Wright testified Respondents violated the standard of care for termiticide use, bait station use, and bait station monitoring. We disagree.

"The economic loss rule is a creation of the modern law of products liability." *Sapp*, 386 S.C. at 147, 687 S.E.2d at 49. It provides "there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself." *Id.* "In other words, tort liability only lies where there is damage done to other property or personal injury." *Id.* The purpose of this rule "is to define the line between recovery in tort and recovery in contract." *Id.* "Contract law seeks to protect the expectancy interests of the parties," whereas tort law "seeks to protect safety interests and is rooted in the concept of protecting society as a whole from physical harm to person or property." *Id.* "In most instances, a negligence action will not lie when the parties are in privity of contract. When, however, there is a special relationship between the alleged tortfeasor and the injured party not arising in contract, the breach of that duty of care will support a tort action." *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 55, 463 S.E.2d 85, 88 (1995).

In *Kennedy*, our supreme court established a narrow exception to the economic loss rule in the context of residential home building and held the rule did not bar recovery in tort when a builder violates an applicable building code or deviates from industry standards. 299 S.C. at 347, 384 S.E.2d at 738; *see also Sapp*, 386

---

[8] *See* S.C. Code Ann. Regs. 27-1085(B)(2) (Supp. 2022) ("Treatment and inspection must be performed in accordance with these regulations and with the terms of the written agreement or contract for as long as the contract is valid.").

S.C. at 148, 687 S.E.2d at 49 (explaining the court in *Kennedy* created a "narrow exception to the economic loss rule to apply solely in the residential home [building] context").  The court explained, "If a builder performs construction in such a way that he violates a contractual duty *only*, then his liability is only contractual," but "[i]f he acts in a way as to violate a legal duty . . . his liability is both in contract and in tort."  *Kennedy*, 299 S.C. at 346, 384 S.E.2d at 737.

In *Tommy L. Griffin Plumbing & Heating Co.*, our supreme court held design professionals were not insulated from liability "when the relationship between the design professional and the plaintiff [wa]s such that the design professional owe[d] a professional duty to the plaintiff arising *separate and distinct from any contractual duties between the parties*."  320 S.C. at 55, 463 S.E.2d at 89 (emphasis added).  The court explained,

> In our view, the *Kennedy* application of the 'economic loss' rule maintains the dividing line between tort and contract while recognizing the realities of modern tort law. . . .  [T]he question of whether [a] plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty [the] plaintiff claims the defendant owed.  A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie.  A breach of a duty arising independently of any contract duties between the parties, however, may support a tort action.

*Id.* at 54-55, 463 S.E.2d at 88 (footnote omitted).

In *Koontz v. Thomas*, this court applied the economic loss rule to plaintiff's professional negligence claim against an architectural firm and upheld the circuit court's conclusion that the rule barred such claims because "the alleged breaches of duty in th[at] case [we]re contractual in nature."  333 S.C. 702, 712, 511 S.E.2d 407, 412 (Ct. App. 1999).  We noted, "Our inquiry . . . is whether the duties [plaintiff] allege[d] . . . ar[o]se from the parties' contract or independently therefrom."  *Id.*

Neither *Dixon* nor *Duc* specifically reference the economic loss rule, but in both cases, the court found the plaintiff was not entitled to bring tort claims when his allegations arose out of the performance or nonperformance of a contract.  In

*Dixon*, our supreme court concluded the plaintiff could bring an action only for breach of contract because "[t]he breach of duty complained of ar[ose] solely from contract and constitute[d] nonfeasance rather than misfeasance." 222 S.C. at 390, 72 S.E.2d at 899. The court stated, "Ordinarily, whe[n] there is no duty except such as the contract creates, the plaintiff's remedy is for breach of contract, but when the breach of duty alleged arises out of a liability independently of the personal obligation undertaken by contract, it is a tort." *Id.* at 389, 72 S.E.2d at 899. In *Duc*, the United States District Court granted summary judgment as to the plaintiff's allegations of negligence, holding the plaintiff could not recover on his negligence cause of action because the defendant owed him "no legal duties independent of the contract." 729 F. Supp. at 1535. The court stated, "South Carolina courts have recognized the distinction between contract and tort causes of action and have held that in order for a plaintiff to state a claim in tort, he must allege a duty owed him by the defendant separate and distinct from any duty owed under a contract." *Id.* In granting summary judgment, the court reasoned that the contract created and defined the duties and liabilities of the parties and that the plaintiff "alleged no breach of duty by [the defendant] that [wa]s independent of the contract." *Id.*

We hold the circuit court did not err in granting partial summary judgment in favor of Respondents on the ground that Carroll failed to identify a duty Respondents owed to him outside of the contract. Here, the Termite Contract defined the duties and liabilities of the parties. Respondents' duty under the contract was to treat, reinspect, and control for termite activity. Carroll alleged that as a result of Respondents' failure to properly inspect and treat for termites, termite activity occurred and caused damage to the Property, which he seeks to repair. He acknowledged during the summary judgment hearing that Respondents' actions "all related to . . . keeping termites out of the [P]roperty." The contract therefore provided for the precise damage that occurred. Even assuming Respondents' failure to adequately perform pest control services violated regulations and industry standards, all of these acts relate to the duties Respondents' owed Carroll under the contract. Thus, such claims do not give rise to legal duties owed outside of the contract. Because Respondents' duties arise solely from contract, we hold the circuit court did not err in concluding Carroll was barred from pursing negligence claims against Respondents. Further, Carroll's allegations pertain to a contract to perform termite services and do not involve residential home building. Thus, we hold the exception to the economic loss rule set forth in *Kennedy* does not apply. *See Sapp*, 386 S.C. at 148, 687 S.E.2d at 49 (explaining the court in *Kennedy* created a "*narrow* exception to the economic loss rule to apply solely in the residential home [building] context" (emphasis added)); *see also Kennedy*, 299

S.C. at 347, 384 S.E.2d at 737 ("The 'economic loss' rule will still apply where duties are created *solely* by contract. In that situation, no cause of action in negligence will lie." (footnote omitted)). Based upon the foregoing, we affirm the circuit court's grant of partial summary judgment as to Carroll's negligence claims because he failed to identify a legal duty separate and distinct from Respondents' contractual duty under the Termite Contract.[9]

## B. Limitation of Remedy to $250,000

Carroll argues each annual renewal of the contract entitled him to $250,000 for each year that Respondents were in breach of the contact.

Carroll has cited no legal authority to support this argument. We therefore find this issue is abandoned. *See Mulherin-Howell v. Cobb*, 362 S.C. 588, 600, 608 S.E.2d 587, 594 (Ct. App. 2005) (noting the appellant abandoned issues on appeal and this court need not consider them when the appellant failed to cite any supporting authority for its position and its arguments were merely conclusory statements).

## C. Exclusion from Coverage

Finally, Carroll argues SCDPR regulations require pest control companies to carry liability insurance and limiting his remedy to breach of contract would nullify this regulation. He contends that during an off-the-record discussion in chambers, Respondents' counsel informed the circuit court that Respondents' policies contained an exclusion for contractual liability. Carroll asks this court to take judicial notice that policy forms for commercial general liability insurance coverage "are generally alike, as evidenced by the exclusionary language in both [Respondents'] policies." He argues this provides another basis for allowing a cause of action in tort in this context.

---

[9] Carroll asserts the issue of whether the economic loss rule applies to contracts for services remains unsettled law. We find this argument is not preserved for our review. *See Herron v. Century BMW*, 395 S.C. 461, 465, 719 S.E.2d 640, 642 (2011) ("At a minimum, issue preservation requires that an issue be raised to and ruled upon by the trial judge."); *cf. Eaton Corp. v. Trane Carolina Plains*, 350 F. Supp. 2d 699, 703 (D.S.C. 2004) (noting "the contours of the doctrine remain far from clear").

We find these arguments are not preserved for appellate review. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779-80 (2004) ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the lower court."); *see also Johnson v. Sonoco Prods. Co.*, 381 S.C. 172, 177, 672 S.E.2d 567, 570 (2009) ("An issue may not be raised for the first time in a motion to reconsider."). During the hearing on the motion for partial summary judgment, Carroll argued, in general terms, that insurance carriers do not provide coverage for breach of contract, leaving homeowners no remedy if they are unable to pursue negligence claims. However, Carroll provided no evidentiary support or legal authority for this argument prior to, or during, the summary judgment hearing. *See Loyd's Inc. by Richardson Constr. Co. of Columbia, S.C. v. Good*, 306 S.C. 450, 453, 412 S.E.2d 441, 443 (Ct. App. 1991) ("[Rule] 56(c) requires summary judgment motions and, inferentially, supporting materials to be on file when they are to be relied upon at a summary judgment motion hearing."). Further, Carroll acknowledged the discussion regarding liability coverage occurred off the record. *See York v. Conway Ford, Inc.*, 325 S.C. 170, 173, 480 S.E.2d 726, 728 (1997) ("An objection made during an off-the-record conference which is not made part of the record does not preserve the question for review. "). We hold this was insufficient to raise the issue to the circuit court at the summary judgment phase. Rather, Carroll argued Respondents' insurance policies contravened SCDPR regulations for the first time in his motion to reconsider. Accordingly, we hold Carroll failed to preserve these arguments for appellate review. *See Peterson v. Porter*, 389 S.C. 148, 152, 697 S.E.2d 656, 658 (Ct. App. 2010) (finding an issue was not preserved for appellate review when the appellant raised the argument in a motion to reconsider but failed to raise it during the summary judgment proceedings).

## D.  Motion to Reconsider

Carroll asserts this court should "reject the findings and conclusions" in the circuit court's order denying his motion to reconsider because they were "false and pretextual." Carroll contends that although the circuit court failed to mention the memorandum or exhibits in its order granting the motion for partial summary judgment, this court must consider these submissions part of the record because the circuit court incorporated them into the record during the hearing.

To the extent Carroll argues the circuit court erred in refusing to consider his memorandum opposing the motion for partial summary judgment and attached exhibits and in declining to consider evidence Carroll presented for the first time with his motion to reconsider, we find these arguments are without merit because

the circuit court acted within its discretion. *See* Rule 56(c), SCRCP (providing a motion for summary judgment "shall be served at least [ten] days before the time fixed for the hearing," and "[t]he adverse party may serve opposing affidavits not later than two days before the hearing"); *Loyd's Inc.*, 306 S.C. at 453, 412 S.E.2d at 443 ("[Rule] 56(c) requires summary judgment motions and, inferentially, supporting materials *to be on file when they are to be relied upon at a summary judgment motion hearing*. To be on file, we hold they ordinarily must have been filed." (emphasis added); *id.* ("However, . . . whe[n] the court file is in the physical custody of the trial judge we hold she ha[s] the discretion and the inherent power to receive the documents and make them a part of the file provided their receipt did not prejudice [the defendant]."); *see also First Union Nat'l Bank of S.C. v. Hitman, Inc.*, 308 S.C. 421, 422, 418 S.E.2d 545, 545 (1992) ("[A] judge is not bound by [a] prior oral ruling and may issue a written order which is in conflict with the oral ruling."); *Johnson*, 381 S.C. at 177, 672 S.E.2d at 570 ("An issue may not be raised for the first time in a motion to reconsider.").

Regardless, we have considered Carroll's memorandum and exhibits. Even considering these submissions, we hold the circuit court did not err in granting the motion for partial summary judgment. *See Town of Summerville*, 378 S.C. at 110, 662 S.E.2d at 41 ("[S]ummary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."). Viewing this evidence in the light most favorable to Carroll, we find none of this evidence established the existence of a duty owed by Respondents to Carroll that was separate and apart from the contract. Rather, the testimony Carroll relies upon pertained to Respondents' failure to perform according to the terms of the Termite Contract. As to the expert testimony regarding the application of termiticide and the violation of regulations and industry standards, this testimony also relates to Respondents' conduct with respect to its duties under the Termite Contract. Thus, we hold the circuit court did not err in finding the evidence did not establish the existence of a duty owed to Carroll that was separate and distinct from the contract.

**CONCLUSION**

Based on the foregoing, the circuit court's order granting partial summary judgment in favor of Respondents is

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS, J., concur.**