# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

James E. Carroll, Jr., Petitioner,

v.

Isle of Palms Pest Control, Inc., SPM Management Company, Inc. and Terminix Service, Inc., Defendants,

Of which Isle of Palms Pest Control, Inc. and SPM Management Company, Inc. are Respondents.

Appellate Case No. 2023-001655

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal From Charleston County
Roger M. Young, Sr., Circuit Court Judge

---

Opinion No. 28291
Heard April 22, 2025 – Filed July 23, 2025

---

## REVERSED AND REMANDED

---

Robert T. Lyles, Jr., of Lyles & Associates, LLC, and Jody Vann McKnight, of McKnight Law Firm, both of Mount Pleasant, and Lee Anne Walters, of Walters Law Firm, of Beaufort, all for Petitioner.

Kelley Shull Cannon, of Howser Newman & Besley, LLC, of Columbia, and Andrew Elliott Haselden, of

Howser Newman & Besley, LLC, of Charleston, for Respondent Isle of Palms Pest Control, Inc.

Robert Michael Ethridge and Mary Skahan Willis, both of Ethridge Law Group, LLC, of Mount Pleasant, for Respondent SPM Management Company, Inc.

---

**JUSTICE HILL:** This appeal requires us to revisit the economic loss rule. The detailed facts and procedural history may be found in the opinion of the court of appeals. *Carroll v. Isle of Palms Pest Control, Inc.*, 441 S.C. 1, 892 S.E.2d 161 (Ct. App. 2023). A quick summary will set the ground for our discussion. Petitioner James E. Carroll, Jr. signed a contract with Respondents for termite protection service for his Isle of Palms home. The contract specified the protection would consist solely of Respondents installing and monitoring "the Exterra Termite Interception and Baiting System (Exterra) for the purpose of controlling subterranean termite infestations of the covered property." At the same time the contract was formed, Respondents provided a Disclosure Form to Carroll. In this form, Respondents represented they had told Carroll that "[b]aits offer no residual protection and thus reinfestation may occur unless they are monitored and replaced as necessary." Because bait stations are considered an "alternative treatment," the form also required Respondents to explain why standard termite treatment procedures would not be performed. Respondents' stated reason was circular, as they explained only that "this type [of] treatment does not require the use of a liquid termiticide." The contract further provided if new termite damage occurred, Respondents' liability was limited to repair costs not to exceed $250,000. The contract stated it contained the parties' entire agreement and could only be modified by a writing signed by both.

Respondents never kept their promise to maintain the bait stations. Instead, without letting Carroll know, they abandoned the bait station system and began treating his home with a liquid application. There is evidence the application was done negligently. Oblivious to the change in treatment type, Carroll renewed the bait station contract each year. Some ten years later, it was discovered Carroll's home was riddled with termites.

Carroll sued Respondents for negligence and breach of contract. The trial court granted Respondents summary judgment as to the negligence claim, ruling that because Carroll's damages all flowed from Respondents' failure to provide adequate termite protection, the economic loss rule operated to confine his remedy to the

breach of contract action.  The court of appeals affirmed.  We granted certiorari and now reverse.

# I.

A. <u>The Economic Loss Rule According to *Kennedy* and *Sapp*</u>

The evolution of the economic loss rule in South Carolina may be traced from the line of cases that began with *Kennedy v. Columbia Lumber & Manufacturing Co*, where we stated:

> The "economic loss rule" simply states that there is no tort liability for a product defect if the damage suffered by the plaintiff is only to the product itself.  In other words, tort liability only lies where the damage done is to other property or is personal injury.

299 S.C. 335, 341, 384 S.E.2d 730, 734 (1989).  We further described the economic loss rule:

> This rule exists to assist in determining whether contract or tort theories are applicable to a given case. Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses.  Conversely, where a purchaser buys a product which is defective and physically harms him, his remedy is in either tort or contract. This is so, the analysis provides, because his losses are more than merely "economic."

*Id*. at 345, 384 S.E.2d at 736.  We then expressed our dissatisfaction with applying the rule when the "product" was a residential home.  *Id*. at 346–47, 384 S.E.2d at 737–38.

We held in *Kennedy* only that the economic loss rule would not apply when the product at issue was a residential home.  *Id*.  We did so as a matter of public policy, noting our longstanding protection of homebuyers and the reality that buying a home is often one's biggest investment.  *Id*. at 344, 346, 384 S.E.2d at 736–37.  We held even if the only loss was the diminished value of the home (i.e. the loss is purely "economic"), the home buyer may pursue tort remedies against a builder if "(1) the builder has violated an applicable building code; (2) the builder has deviated from

industry standards; or (3) the builder has constructed housing that he knows or should know will pose serious risks of physical harm." *Id.* at 347, 384 S.E.2d at 738.

But *Kennedy* emphasized it was not redrawing the traditional boundary line between contract and tort. We explained "[i]f a builder performs construction in such a way that he violates a contractual duty *only,* then his liability is only contractual. If he acts in a way as to violate a legal duty, however, his liability is both in contract and in tort." *Id*. at 345–46, 384 S.E.2d at 737.

Twenty years after *Kennedy*, we decided *Sapp v. Ford Motor Co.*, 386 S.C. 143, 687 S.E.2d 47 (2009). *Sapp* involved a pure economic loss: the truck the buyer had purchased burned. There was no personal injury or any damage to other property. We affirmed summary judgment to Ford on the buyer's tort claims because the only damage was to the product itself. We explained *Kennedy* was a "very narrow" exception to the economic loss rule, and the exception only applied in the residential home context. We also overruled *Colleton Preparatory Academy, Inc. v. Hoover Universal, Inc.*, 379 S.C. 181, 666 S.E.2d 247 (2008), which had expanded the exception to commercial construction. Although *Sapp* did not mention it, we have rejected the economic loss rule to allow tort recovery of purely commercial losses caused by professionals for breach of their professional duties imposed by law. *See Beachwalk Villas Condo. Ass'n v. Martin*, 305 S.C. 144, 147, 406 S.E.2d 372, 374 (1991) (architects); *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc*., 320 S.C. 49, 55–56, 463 S.E.2d 85, 89 (1995) (engineers and design professionals).

### B. The Confusing Corridors of the Economic Loss Rule in the United States

We understand our previous cases dealing with the economic loss rule have caused confusion. But we are in good company. Use (and misuse) of the economic loss rule has exploded in the past forty years, making it "the most important development of the past generation in the American common law of torts. It has also been the most confusing development." Ward Farnsworth, *The Economic Loss Rule*, 50 Val. U. L. Rev. 545, 545 (2016).

The purpose of the economic loss rule is to limit the remedies the buyer of a product has if the sole harm is to the product itself. When a product fails and causes injury only to itself, the buyer's loss is only "economic"—for no personal injury has occurred, and no physical damage has been caused to his other property or the property of third parties. The loss is "economic" in part because the damages and other economic consequences—such as lost profits, repair or replacement costs, depreciation, and other consequential damages—are financial in nature. But

personal injuries and injuries to other property apart from the product itself can include serious economic losses. Indeed, many torts often cause nothing but financial loss, such as defamation, fraud, interference with contractual relations, invasion of privacy, and breach of fiduciary duty, to name just a few. For this reason, it has been observed that the "economic loss rule" should for precision be called "the commercial loss rule":

> It would be better to call it a "commercial loss," not only because personal injuries and especially property losses are economic losses, too—they destroy values which can be and are monetized—but also, and more important, because tort law is a superfluous and inapt tool for resolving purely commercial disputes. We have a body of law designed for such disputes. It is called contract law.

*Miller v. U.S. Steel Corp.*, 902 F.2d 573, 574 (7th Cir. 1990). Whether called the commercial loss rule or the economic loss rule, the rule is partly based on the idea that the purely commercial losses that befall the buyer of a product when the product physically injures only itself must be redressed by the law of contracts or warranty. There is no need to resort to a tort remedy, and if the buyer could avail himself of tort law, then the parties' contract means nothing. This is the lesson of the watershed economic loss case, *Seely v. White Motor Co.*, 403 P.2d 145 (Cal. 1965), whose rationale has been approved in an admiralty case by the United States Supreme Court, *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 871 (1986). When the buyer has lost nothing but the benefit of his bargain, the risk of such loss should be resolved by the parties' agreed upon allocation of risk. The parties entered into the sales agreement expecting a prospective advantage, and contract law exists to protect these expectancies based on the parties' private ordering of their private duties. Jay M. Feinman, *The Economic Loss Rule and Private Ordering*, 48 Ariz. L. R. 813, 814 (2006).

The economic loss rule emerged largely as a response to the advent of the law of strict products liability, which had mixed in it principles of both tort and contract. Due to the hazards posed by sellers placing products into the stream of commerce that are in a defective condition unreasonably dangerous to the user or consumer, the law of strict products liability was devised.

But the hybrid nature of strict products liability law rattled the field of traditional contract law. Product manufacturers feared that disappointed buyers and downstream users and consumers could now sue them in tort for purely financial losses, exposing them to risks of damage awards that could no longer be limited by

the parties' agreement. The doctrinal concern was that "contract law would drown in a sea of tort." *East River S.S. Corp.*, 476 U.S. at 866. The economic loss rule allayed these fears by holding that if the only damage caused by a product defect was to the product itself, the buyer was limited to the remedies guaranteed by the contract or the law of warranty. *Id*. at 871 (holding that "a manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself").

The economic loss rule seems to attract withering criticism and relentless controversy whenever it creeps beyond the product setting. As often happens when a legal doctrine is uprooted from its natural habitat, the rule has not weathered its trip from the product liability realm well. For starters, there is uncertainty about what the "rule" is. As commentators have suggested–and case law proves–there is not just one economic loss rule but several. Dan B. Dobbs, Paul T. Hayden & Ellen M. Bublick, *The Law of Torts* § 607, Westlaw (2d. ed. database updated April 2025). But settling on a single definition of the rule does not help much, as each version of the rule is warped by so many exceptions it eludes recognition. One count tallies the number of exceptions derived by various jurisdictions at eighteen (including the sudden calamity exception, the asbestos exception, the services exception, personal injury and other property exceptions, the fraud exception, and so on). Several puzzling decisions have for some reason held the rule does not apply to fishermen. Farnsworth, *supra*, at 566–68.

Making sense of the jigsawed landscape of the economic loss rule is a challenge that one leading commentator has well described: "These exceptions have drained the general rule of much of its clarity and utility. A long list of exceptions, especially when the list is unsettled, makes it hard for the lawyer or judge to keep the law straight or to advise about it with confidence." *Id*. at 549.

The quest for a universal vision of how the economic loss rule should be applied outside the products context appears to be ongoing across the country, but at this point, the view might not be worth the climb. Especially when, as we shall see, other states are now backtracking. Experience has shown that a broad expression of the rule "creates a presumption against liability in cases that don't fit into one of the well-defined exceptions," causing "legitimate claims to be snuffed out." *Id*. at 550.

Perhaps the best definition is this: the economic loss rule "means there is no recovery in tort for pure economic loss, except when there is." *Id*. at 571. Put another way, anyone who can explain the economic loss rule does not truly understand it.

C. Updating the Economic Loss Rule in South Carolina

Exasperation with the economic loss rule has led the supreme courts of Florida and Tennessee to return it to its roots by limiting its scope to product cases. We find these decisions lucid and compelling. *Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So.3d 399, 406–07 (Fla. 2013) (lamenting the "unprincipled expansion" of the economic loss rule, and stating "expansion of the rule beyond its origins was unwise and unworkable in practice"); *Com. Painting Co. v. Weitz Co.*, 676 S.W.3d 527, 533 (Tenn. 2023) (decrying the "widespread confusion and lack of clarity resulting from the unwarranted expansion of the economic loss doctrine"); *see also May v. First Rate Excavate, Inc.*, 19 N.W.3d 1, 7 (S.D. 2025) (reaffirming that economic loss rule "should not be expanded beyond the UCC or product liability claims").

Today, we clarify a few things about the economic loss rule. First, we hold that the rule applies only in the product liability context and when the only injury is to the product itself. In such instances, the loss is economic or commercial, and the remedy is limited to the laws of contract or warranty. *See Bishop Logging Co. v. John Deere Indus. Equip. Co.*, 317 S.C. 520, 528–31, 455 S.E.2d 183, 188–89 (Ct. App. 1995) (holding economic loss rule barred claim for negligent misrepresentation when only damage was to product sold to plaintiff); Vincent R. Johnson, *The Boundary-Line Function of the Economic Loss Rule*, 66 Wash. & Lee L. Rev. 523, 551 (2009) ("The economic loss rule operates sensibly in the products liability field because the commercial nature of the underlying transaction means that a contract-law remedy is not only feasible, but routinely available. . . . In addition, the ubiquitous adoption of the Uniform Commercial Code (UCC) means that there is a carefully crafted statutory mechanism available for resolving economic loss claims."). Where, however, the defective product causes personal injury or damage to other property, the plaintiff may also look to the law of torts.

We also stress what the economic loss rule is not. It is not a doctrine that says economic damages may not be recovered in tort. We rejected this thought in *Tommy L. Griffin Plumbing & Heating Co.*, 320 S.C. at 54, 463 S.E.2d at 88. Adhering to our precedent, we also reaffirm that the economic loss rule does not apply in the context of the sale or construction of a residential home or to the rendering of services by professionals, such as accountants, lawyers, engineers, and architects. *Id*. at 54–55, 463 S.E.2d at 88–89.

The refinement of the economic loss rule we announce today is, in a sense, a homecoming. The rule appeared as an anchor thrown out to keep tort law from drifting into the well-marked domain of contract law. But the boundary separating

these domains is not new. We have long recognized the general rule that "where there is no duty except such as the contract creates, the plaintiff's remedy is for breach of contract, but when the breach of duty alleged arises out of a liability independent[] of the personal obligation undertaken by contract, it is a tort." *Dixon v. Texas Co.*, 222 S.C. 385, 389, 72 S.E.2d 897, 899 (1952). Close examination reveals that *Kennedy* was saying the same thing.

*Dixon* recognized something relevant to our case here—the mere failure to perform a contract, without more, cannot support a tort action. Instead, there must be some "active negligence or misfeasance" that occurs outside the terms of the contract. *Id.* Mere nonfeasance is not enough. The cause of action for failing to perform or negligently performing a contract is breach of contract. We believe this supplies a limiting principle sufficient to protect the boundary between tort and contract law, without saddling the analysis with the economic loss label and all its baggage. *See generally* W. Page Keeton et. al., *Prosser and Keeton on Torts* § 92 (5th ed. 1984). *Kennedy* nodded to the principle when it stated that no tort action will lie where only a contractual promise has been broken. 299 S.C. at 345–46, 384 S.E.2d at 737. This was merely an echoing of *Dixon*.

The case before us shows the futility of seeking a coherent application of the economic loss rule when, as here, no product was manufactured or sold. One might stretch and call the bait stations the product, but they were not damaged, and besides, the contract states Respondents retained ownership of them. If it is claimed the house is the product, then we are moving away from the reasons underlying the rule because the contract was not for the sale or construction of the house.

Some courts have interpreted the economic loss rule to apply not only beyond the product context, but to any claim where the loss relates to the subject matter of the parties' contract. *See, e.g.*, *Reighard v. Yates*, 285 P.3d 1168, 1174 (Utah 2012). As we have held, we decline to apply the economic loss rule outside the product context. Nevertheless, *Sapp* alludes to this notion of contemplated loss, as has the Fourth Circuit. *Sapp*, 386 S.C. at 150, 687 S.E.2d at 50 (noting federal decisions that found South Carolina's "economic loss rule prohibited negligence actions against a manufacturer where duties were created solely by contract and where the product only injured itself or where the damage was contemplated by the parties' contract" were "correct"); *Palmetto Linen Serv., Inc. v. U.N.X., Inc.*, 205 F.3d 126, 129–30 (4th Cir. 2000). Such an interpretation of the economic loss rule would preclude any tort remedy in this case because the damage that occurred (termite damage to the house) was "contemplated," and therefore limited by, the parties' contract. The idea that the economic loss rule should limit the parties to their private allocation of risks if the damage caused relates to the subject matter of the contract does not fare well

in the light. It invites inevitable bickering over the contract's scope and precisely what was (or should have been) contemplated. And it would do us no good here, for the damage was allegedly caused by an act that occurred outside the contract's scope. Apart from the product liability setting, restricting an injured party to a contractual remedy for conduct that breaches a duty independent of the contract is nonsense. Such an unnatural expansion of the economic loss rule would drown tort law in a sea of contract. At any rate, we think it unwise to adopt such a rule as it would dilute the traditional contract analysis represented by *Dixon*. *See* Johnson, *supra*, at 575-76 (noting a rule that would prohibit tort action whenever the loss related to the subject matter of the parties' contract is ridiculously broad and easily manipulated). In a non-products case, if a party breaches a duty independent of his contractual obligations, a tort remedy is allowed, unless the parties' contract has expressly excluded tort remedies and the exclusion comports with public policy.

A rule that excludes tort remedies whenever the loss suffered was contemplated by the contract or related to its subject matter is folly. Consider the case before us. Carroll could not be expected to consider, much less allocate, the risk posed by the infinite number of actions Respondents might take outside the scope of the contract. And it would be startlingly illogical and unfair to conclude Carroll is limited to the remedies he negotiated for breach of the contract simply because conduct beyond the contemplation of the contract caused consequences that were within it. A brief example illustrates this point. Suppose a homeowner enters a contract for a fire protection and smoke alarm system with seller, a sole proprietor. The homeowner agrees in the contract that if any fire damage is caused to his home, the seller's liability is capped at $1,000. Then suppose the seller, leaving the home after securing the contract from the homeowner, decides to have a campfire cookout in some nearby woods. But due to his carelessness, the fire becomes uncontrollable, setting the woods ablaze and eventually burning down the homeowner's house, causing no personal injury and no damage to the homeowners' other property. The economic loss to the homeowner is well north of the $1,000 cap. Yet, because homeowner lives in a jurisdiction where the economic loss rule applies anytime the loss relates to the subject matter of the contract, the homeowner is out of luck. He cannot sue the seller for negligence or any other tort. He is stuck with his contract, even when the seller's conduct had nothing to do with the contract but everything to do with the loss. And this is so even though the homeowner could have sued in tort to regain his full economic loss from anyone in the world who started the fire, except the seller.

We therefore abrogate the *Sapp* decision to the extent it suggests the economic loss rule applies whenever the loss was within the contemplation of the contracting

parties. That suggestion conflicts with *Kennedy* where we observed that viewing the economic loss rule as focusing on consequence rather than activity "generates difficulties." 299 S.C. at 345, 384 S.E.2d at 737. These difficulties disappear with our holding that the economic loss rule only applies in the product context.

### D. Applying the Updated Economic Loss Rule to Carroll's Negligence Claim

Applying our holding to the facts before us, we first rule that the economic loss rule does not apply because the contract did not involve the sale of a product. We next consider, consistent with the fundamental contractual analysis of *Dixon* and *Kennedy*, whether the duty Respondents breached was a duty solely defined by the parties' contract. It was not. Respondents' conduct in secretly treating Carroll's home with liquid termiticide was beyond the parties' bargain. If Respondents had just abandoned the contract, then we would agree Carroll's sole remedy would be for breach of contract, for Respondents would have merely failed to do what they promised. But Respondents did not stop there. They undertook a separate act, outside the parties' bargain. By doing so, their duty to Carroll was no longer defined and bound up by the contract but by the law's command that they use due care. *See Roundtree Villas Ass'n., v. 4701 Kings Corp.*, 282 S.C. 415, 423, 321 S.E.2d 46, 51 (1984) (holding one who undertakes a duty owes common law duty of due care); *see also Wright v. PRG Real Estate Mgmt., Inc.*, 426 S.C. 202, 212–13, 826 S.E.2d 285, 290–91 (2019).

There is evidence in the record sufficient to create a genuine issue of material fact that Respondent applied the termiticide negligently. At the summary judgment hearing, Carroll's counsel repeatedly argued that Respondents had breached an independent duty separate from the duties found in the contract by applying the termiticide. The more difficult question is whether the allegedly negligent application was a proximate cause of the termite damage to Carroll's home. It would be up to the jury to determine that, but there is enough evidence in the record to survive summary judgment. The jury could just as well decide Respondents' breach of the contract by abandoning the bait stations was the sole proximate cause of the loss or that the loss was not proximately caused by either Respondents' negligence or breach of contract.

Applying the limiting principles of duty and proximate cause to this case reinforces our belief that they are sturdy enough to police the boundary line between tort and contract law, without the muddling mash-up that some jurisdictions have made of the economic loss rule. *See, e.g.*, *Rattagan v. Uber Tech., Inc.*, 553 P.3d 1213, 1219–41 (Cal. 2024) (containing a remarkably lengthy discussion of whether economic loss rule barred party to contract from asserting claim for fraudulent concealment).

We believe the prudent course is to limit the economic loss rule to the product liability context, and we so hold.

Outside the product liability realm, the ancient walls marking the boundary between tort and contract law remain a solid border. Existing concepts of damages (including the prohibition against double recovery), election of remedies, and proximate cause have long protected parties against speculative, unforeseeable, and other outlier losses. *See Com. Painting Co.*, 676 S.W.3d at 541–42; *see also* Johnson, *supra*, at 543-44.

## II.

Because we are reversing the grant of summary judgment as to Carroll's negligence cause of action, we also hold that the $250,000 limitation of liability found in the parties' contract will apply only if the verdict is solely based on Carroll's breach of contract cause of action.

## III.

On a final note, we appreciate the thoughtful efforts the trial court and the court of appeals put forth in wrestling with the thicket that had grown around our past economic loss rule precedent. It is our hope the clearing out we have attempted today will simplify the approach to the economic loss rule.

**REVERSED AND REMANDED.**

**FEW, JAMES and VERDIN, JJ., concur. KITTREDGE, C.J., concurring in a separate opinion.**

**CHIEF JUSTICE KITTREDGE:** I concur in result and join Justice Hill's scholarly majority opinion in reversing the grant of summary judgment to Respondents. In my judgment, the majority has properly interpreted the scope of Respondents' contractual duties. The contract limited Respondents to providing and maintaining a particular termite bait system. Despite Respondents' arguments to the contrary, the contract cannot be read more broadly to require Respondents to prevent termite infestation regardless of the means utilized. Respondents unilaterally abandoned the contractually mandated bait system and, allegedly negligently, sprayed termiticide without notifying the homeowner or the government, as required by law. Thus, I agree with the majority that granting summary judgment to Respondents was improper.

Nonetheless, I write separately to emphasize this Court must remain vigilant to adhere to our longstanding rule that "[o]rdinarily, where there is no duty except such as the contract creates, the plaintiff's remedy is for breach of contract, but when the breach of duty alleged arises out of a liability independent[] of the personal obligation undertaken by contract, it is a tort." *Dixon v. Texas Co.*, 222 S.C. 385, 389, 72 S.E.2d 897, 899 (1952). I hope our decision today is read to follow, not erode, that rule.